(14 Misc. Rep. 421.)

ROUGE v. ROUGE.

(Superior Court of New York City, Special Term. November, 1895.)

1. ATTACHMENT—UNLIQUIDATED DAMAGES.
   Under Code Civ. Proc. § 635, subd. 3, as amended by Laws 1895, c. 578, providing for an attachment against property in an action for "an injury to person or property, in consequence of negligence, fraud or other wrongful act," the amount for which the attachment will issue, where the damages are unliquidated, is in the discretion of the court.

2. RETROACTIVE STATUTES—LAW AFFECTING REMEDY.
   Such section affects the remedy only, and therefore embraces causes of action which accrued prior to its passage.

Action by Margaret Elizabeth Rouge against Gabriel Mark Rouge to recover damages for the alienation of her husband's affections. Motion to vacate the attachment against property. Denied.

David Murray, for the motion.
Edward Gebhard, opposed.

McADAM, J. The plaintiff brings the action against the defendant for alienating the affections of her husband. The gravamen of the complaint is that, while plaintiff was living in the city of Geneva, Switzerland, with her husband, the defendant made unto the husband false and malicious statements of and concerning plaintiff, that she was not a good, true, faithful, and worthy wife, and that the defendant caused an action to be begun by the plaintiff's husband against her in a court of competent jurisdiction in Switzerland aforesaid, for the purpose of procuring a judgment therein annulling and ending her marriage with said husband, which suit is now pending; and by reason of the acts of the defendant the plaintiff claims she has been deprived of the support, society, and affection of her husband, to her damage $25,000.

At the time of the commencement of the action the plaintiff procured an attachment under subdivision 3 of section 635 of the Code, as amended in 1895, which provides that an attachment against property may be granted in an action for "an injury to person or property, in consequence of negligence, fraud or other wrongful act." The latter portion of this provision is comprehensive enough to embrace the present case. Wilson v. McGregor (Sup.) 12 N. Y. Supp. 39. Prior to this amendment, resort to the process of attachment was allowed only to "creditors," or for injuries to property, where the amount demanded was capable of accurate computation; the existence and restriction of the remedy being, of course, dependent upon the terms of the governing statute. While it is easy to understand why a creditor proceeding against a nonresident should be allowed to impound property found within the jurisdiction of the court, to answer as security for any claim existing, or for the amount in dollars and cents of any specific injury done to property, it is not apparent, on first view, why the legislature should have included actions for injuries to the person, where the damages are unliquidated, and where the plaintiff in his declaration and affidavit generally places them at an unusually high figure. Neither the com-

plaint nor affidavit in such an action can furnish any certain guide from which the judge granting the attachment may determine what the actual damages are. The legislature certainly did not intend that the attachment should run for any amount a plaintiff might see fit to insert in the ad damnum of his complaint. The plaintiff has in this instance fixed the damages at $25,000. She might have put them at $250,000, but it does not follow that property of the defendant is to be impounded to answer the demand thus made. The practice in this respect must therefore be assimilated to that followed in granting orders of arrest. Where such orders are made in actions for injuries to the person, the bail is fixed in such sum as the judge may judicially determine, in view of the nature and extent of the injuries complained of and the probable ultimate recovery. Doubtless the legislation was intended to reach a class of cases where injuries to the person were inflicted upon residents of this state, who in consequence of the nonresidence of the wrongdoer were practically remediless. No order of publication would lie, because no property has been attached. To supply this omission in the law the new remedy was furnished, and it was designed more to coerce the appearance of the tort feasor than to impound his property. With this end in view the act may be wise legislation; but to go further, and grant attachments against the property of nonresidents in ordinary tort actions, for any sum the plaintiff sees fit to demand, would lead to great abuse. It is evident, therefore, that the legislature intended that a judge, in issuing the attachment, should exercise judicial discretion as to the damages likely to be recovered, in order to fix the amount for which the attachment should go, upon the principles which guide him in granting an order of arrest. The plaintiff may thus recover the sum impounded if the damage is equal to that amount, and the defendant, by his nonappearance, prevents a judgment in personam that might be enforceable by an action thereon in any other jurisdiction. Where the action is between foreigners for torts committed in a foreign country, the courts of this state may take jurisdiction, or in their discretion decline it. De Witt v. Buchanan, 54 Barb. 31; Burdick v. Freeman, 46 Hun, 138, affirmed 120 N. Y. 421, 24 N. E. 949. Whether the court in its discretion should have declined jurisdiction here is a question that need not be considered now, as that matter was determined in the plaintiff's favor upon the issuing of the attachment. Code Civ. Proc. § 416.

Upon the facts stated in the complaint and affidavit it is not at all likely that the plaintiff would recover more than $5,000 damages, and there is no reason why the attachment should be held for a greater amount; and, in analogy to the practice of reducing bail on arrest, the attachment herein will be reduced to that sum. The attachment not being a writ of right (Sartwell v. Field, 68 N. Y. 341; Allen v. Meyer, 73 N. Y. 1), the court might, and, perhaps, would, after a general appearance in the action, vacate it, in the exercise of a wise discretion, particularly if it appeared that it was used oppressively. But that subject need not be seriously considered here, for it is not now before the court, as the defendant has simply

interposed a special appearance for the purpose of this motion only.

The defendant claims that, as the cause of action accrued prior to the passage of the act, the case does not fall within its provisions, and to hold that it did would be to give the statute a retroactive effect, contrary to the canons of statutory construction. But to these rules there are exceptions, notably among which is that, where the act affects the remedy, it may have a retrospective effect; that is, may be applied to cases pending, or rights of action existing, at the time the remedy is invoked. 1 Kent, Comm. 455; People v. Spicer, 99 N. Y., at page 233, 1 N. E. 680; Neass v. Mercer, 15 Barb. 318; Southwick v. Southwick, 49 N. Y., at page 517; People v. Board of Sup'rs of Ulster Co., 65 N. Y. 300; Lazarus v. Railway Co., 145 N. Y. 581, 40 N. E. 240. The principle was followed in Dickerson v. Cook, 16 Barb. 509, where it was held that section 292 of the Code of 1849, authorizing the examination of a judgment debtor, upon the return of an execution issued against him unsatisfied, applies to cases where the execution was issued before the Code took effect, as well as to executions issued subsequent to that time.

It follows that the motion to vacate the attachment must be denied, but the amount for which the property is seized or impounded will be reduced to $5,000.