(56 Misc. Rep. 168.)

### J. J. NEWMAN LUMBER CO. v. WEMPLE et al.

(Supreme Court, Special Term, Monroe County. October, 1907.)

1. STATES—MECHANICS' LIENS—PUBLIC BUILDINGS—STATE AS DEFENDANT.
    Plaintiff sued to foreclose a lien on a balance due under a contract for the erection of a state building. The state was made a party defendant, before the passage of Laws 1906, p. 548, c. 255, amending Code Civ. Proc. § 3400, permitting the state to be made a party in such an action. In contemplation of such act the Attorney General stipulated that a demurrer previously interposed by the state on the ground that it could not be sued was withdrawn, and 20 days was given the state to answer. *Held,* that the state was not in a position to claim that it was improperly sued, or that plaintiff should have filed an additional notice of pendency after the passage of the act.

2. SAME—PROCEDURE.
    Where an action has been brought to foreclose a mechanic's lien for a public improvement, in which all other persons having liens are parties, it is not necessary for the several defendants who have filed liens to file notices of the pendency of such action to continue their liens in force after three months.

3. SAME—DEFENSES—DELAY.
    Where the state, under a building contract, was to furnish the contractors with certain articles, and failed so to do, and delays were caused by its failure so to do, it is not in a position to complain of delay.

4. SAME—CONTRACT—WAIVER OF CONDITIONS.
    Where, after the time for the completion of a state building, the contractors continued the work, which was accepted by the state, which made payments, and delays were partially caused by the state, it waived the requirement that the work be completed before that time.

5. SAME—NOTICE OF CLAIM.
    Where a notice of lien shows that it is a claim against the state as the owner of the real estate described, it is not invalid because of the subsequent statement in a printed form that a lien is claimed against the real estate.

Action by the J. J. Newman Lumber Company against J. Cady Wemple and others to foreclose a lien. Judgment for plaintiff.

Lewis & McKay, for plaintiff.
John Desmond, Deputy Atty. Gen., for the State.

CLARK, J. This is an action brought by the plaintiff to foreclose a lien filed against moneys due, or to become due, under a contract made between the board of managers of the State Industrial School and J. Cady Wemple and George W. Eycleshymer, composing a co-

partnership, doing business under the firm name and style of the "Schenectady Engineering & Construction Company." The contract was dated August 30, 1904, and was for the construction of 16 cottages and 16 barns on the State Industrial School property at Rush, N. Y., and the contractors were to receive for such work $96,454.82. The contract was to be completed on or before the 31st day of May, 1905. The plaintiff's lien is one of about 84 liens filed against the same moneys, 16 of said liens being for materials furnished, and the balance were for labor. Two of the liens for materials and 7 for labor were not proven upon the trial, but all of the lienors were made parties defendant. The answers of each of the defendants, lienors, sets forth his lien, and seeks for a foreclosure of the same. The defendants, the state of New York and the board of managers of the State Industrial School, each appeared by the Attorney General, and by their answers they admit the making of the contract, and admit certain payments made to the contractors, and, as defenses, they allege that the contractors made default in not progressing with the work according to the terms of the contract, and that, because of such fact, the board of managers of the State Industrial School, after giving notice as required by the contract, canceled the same, and advertised for new bids, and completed the work at a large expense over and above the contract price, and that at the time of the filing of the several liens there was no money due to the contractors from the state of New York, and none to become due in pursuance of the terms of the contract. By the terms of the contract 85 per cent. of the value of the materials and work incorporated in the building, as certified by the state architect, was to be paid monthly as the work progressed, and the balance was to be paid upon the satisfactory completion of the contract, when so certified by the architect. This action was tried at the Monroe Equity Term in October, 1906, before Mr. Justice Dunwell, who died before rendering a decision in the case, and, by stipulation of all of the attorneys, it was submitted to the undersigned for decision. The first of the liens was filed July 29, 1905, and the last February 13, 1906, and this action was brought February 6, 1906. The defendant the people of the state of New York demurred to the complaint, on the ground that the court had no jurisdiction of the person of the defendant the people of the state of New York, and that the people of the state could not be sued without their consent, and that no consent had been given or alleged. Subsequently, and on the 5th day of May, 1906, a stipulation was entered into between the plaintiff's attorney and the Attorney General, representing the state of New York, to the effect that, inasmuch as an act had recently been passed by the Legislature permitting the plaintiff in an action of this character to make the state a party defendant, the demurrer above referred to was withdrawn, without costs to either party, and the defendant the people of the state of New York was given 20 days after the date of the stipulation within which to answer the complaint, and subsequently, and on or about the 11th day of May, 1906, the state of New York, by its Attorney General, appeared generally in the case, and served an answer in which nothing was said about the state not properly being

made a party, but setting up as a defense that the contractors failed to perform the contract according to its terms, and the board of managers of the State Industrial School canceled the contract, and that the contract was completed by other parties at an additional cost to the state of about $40,000, and that at the time of the filing of the several liens referred to in the complaint there was no money due to the said contractors from the state of New York, nor did any become due thereafter in pursuance of the contract above referred to, and judgment was demanded in behalf of the people of the state of New York to the effect that the complaint be dismissed, with costs. At the conclusion of the plaintiff's evidence the Attorney General moved for a dismissal of the complaint upon three grounds, as follows: First, that the defendants, lienors, never commenced any action or served any notice of pendency on the Comptroller; second, that the plaintiff, lienor, failed to file a notice of pendency of this action after April 19, 1906, when the amendment permitting the state to be sued went into effect; and, third, that at no time was there any fund to which the liens could be attached.

Mechanic's liens are clearly the creature of the statute, and the general lien law, passed in 1855, did not apply to public property. By Laws 1897, pp. 514, 545, cc. 418, 419, the present lien law was enacted, and in 1902 section 5 of the lien law was amended as follows:

"A person performing labor for or furnishing materials to a contractor, his sub-contractor or legal representative, for the construction of a public improvement, pursuant to a contract, by such contractor, with the state or a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials upon the moneys of the state or such corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract, upon filing a notice of lien as prescribed in this article." Laws 1902, p. 74, c. 37.

And by the same act it was provided that a person performing work or furnishing materials for a public improvement might file a notice of lien with the head of the department having charge of such construction, and with the Comptroller of the state. Section 16 of the lien law provides, among other things:

"That if a lienor is made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action within the time prescribed in that section, the lien of such defendant is thereby continued, and such action shall be deemed an action to enforce the lien of such defendant, lienor."

Section 17 of the lien law, as amended by chapter 25, p. 31, Laws 1899, and as further amended by chapter 37 of the Laws of 1902, provides, among other things, as follows:

"If a lien is for labor done or materials furnished for a public improvement, it shall not continue for a longer period than three months from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien, within that time, and a notice of the pendency of such action is filed with the comptroller of the state, or the financial officer of the municipal corporation, with whom the notice of such lien was filed, or unless an order be made by a court of record continuing such lien and a new docket be made stating such fact." Laws 1899, p. 31, c. 25; Laws 1902, p. 75, c. 37.

It is not pretended that any action excepting the present one was commenced to foreclose any of the mechanic's liens in question, and it is conceded that none of the defendants, lienors, filed notices of pendency with the Comptroller; the only notice of pendency that was filed at all being the one filed by the plaintiff at the time this action was commenced, making the other lienors defendants in the action.

The learned Attorney General insists that inasmuch as the defendants, lienors, filed no notice of pendency, their liens are nullities, and cannot be enforced, because they had not proceeded according to the express directions of section 17 of the lien law, as amended in 1902 (Laws 1902, p. 75, c. 37, supra), and he cites as his leading authority the case of Danziger v. Simonson, 116 N. Y. 329, 22 N. E. 570. That case, it seems to me, cannot be considered as a controlling authority here, for it construed a section of the New York consolidation act, which provided, among other things, as follows:

"And where a claimant is made a party defendant to any action, brought to enforce any other lien, a notice of the pendency of such action must be filed by him, or in his behalf." Laws 1882, p. 1, c. 410, as amended by Laws 1883, p. 310, c. 276.

In the Danziger Case the action was brought to foreclose a mortgage, and the defendant was an answering lienor who had not filed a notice of pendency, and the court held that, inasmuch as no notice of pendency had been filed by the defendant or in his behalf within the time prescribed by the consolidation act, the defendant's lien had expired, but a reading of section 17 of the lien law, as amended by chapter 37, p. 75, Laws 1902, will show that there is nothing in that section to indicate that when a claimant is made a party defendant to an action to enforce any other lien that he must file a notice of pendency of such action, or one must be filed in his behalf. The section of the consolidation act construed in the case of Danziger v. Simonson, supra, reads as follows:

"No lien provided for in this title shall bind the property therein described for a longer period than ninety days after the claim has been filed, unless an action be commenced within that time to enforce the same and a notice of the pendency of such action filed with the clerk of the county and an entry of the fact of such notice made on the lien docket. And *when a claimant is made a party defendant to any action brought to enforce any other lien a notice of the pendency of such action must be filed by him or in his behalf.*"

It will be observed that the words italicized in the consolidation act are significantly lacking in section 17 of the labor done or materials furnished for a public improvement lien law. The lien law (section 17) says:

"If the lien is for labor done or materials furnished for a public improvement, it shall not continue for a longer period than three months from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien within that time, and a notice of the pendency of such action is filed with the comptroller of the state or the financial officer of the municipal corporation with whom the notice of such lien was filed," etc.

This language is strikingly similar to the language of the consolidation act above quoted, down to the words italicized and, if section

17 of the lien law had had a sentence similar to that above italicized in the quotation from the consolidation act, the case of Danziger v. Simonson, supra, cited by the Attorney General, would have been absolutely conclusive, but, in the absence of anything in the lien law (section 17) to the effect that, when "a claimant is made a party defendant to any action brought to enforce any other lien, a notice of the pendency of such action must be filed by him or in his behalf," I believe that sections 16 and 17 of the lien law should be read together; and section 16 distinctly provides as follows:

"If a lienor is made a party defendant to an action to enforce another lien, and the plaintiff, or such defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued, such action shall be deemed an action to enforce the lien of such defendant, lienor," etc.

The main object of the filing of a notice of pendency is to furnish people who are interested in the property or fund affected with the knowledge of what is going on, and that certainly was done by the notice of pendency filed by the plaintiff, and I can see no reason why every man who had a lien and was made a party defendant in this action should file a notice of pendency so as to give notice precisely similar to the notice that was given by the plaintiff in the notice of pendency filed by him, and I do not think it was necessary for each of the defendant lienors to file separate notices of the pendency of action, but it was entirely sufficient if the plaintiff filed a proper notice, including the names of the defendants to save their rights as lienors. McAllister v. Case, 5 N. Y. Supp. 918; Neuchatel Asphalt Co. v. Mayor, 12 Misc. Rep. 26, 33 N. Y. Supp. 64, affirmed 155 N. Y. 373, 49 N. E. 1043. When one notice of pendency was filed with the proper officer—in this case with the Comptroller of the state—setting forth fully, among other things, the names of the defendants, lienors, so that anybody interested, by examining that document, could have knowledge of the pendency of the action, and that these several lienors had claims or liens upon the funds sought to be reached, that notice was sufficient, without requiring each defendant to do precisely the same thing the plaintiff had done when he filed his notice, for the filing of a lis pendens of each one of the defendants could not possibly afford greater notice to persons interested than was accomplished by filing of the lis pendens to the plaintiff. These defendants, lienors, had furnished materials for or performed labor upon buildings belonging to the state of New York. The state had had the benefit of these materials and this labor, and I do not think that any very nice rule should be applied for the purpose of spelling out some flaw by which the state of New York can defeat claims for labor performed and materials furnished of which it has had the full benefit. On the other hand, it seems to me that the section should be liberally construed, to the end that justice may be done to those who have parted with value, either by their personal labor or by the materials that they have furnished, and this is especially authorized by the lien law, which directs that it shall be liberally construed. Lien Law, § 22; Brace v. City of Gloversville, 167 N. Y. 452, 60 N. E. 779; McDonald v. Mayor, 170 N. Y. 409, 63 N. E. 437. A notice of the pendency of this

action, containing the names of all other lienors, was filed by this plaintiff with the Comptroller of the state of New York on the 6th day of February, 1906. There is no pretense but that it was sufficient to give notice that these various defendants, lienors, claimed to have liens upon the funds which had been appropriated for the purpose of constructing these buildings at Rush, and I believe a fair interpretation of both sections 16 and 17 of the lien law, in the absence of a positive statement that the defendants must each file a notice of pendency, or that one must be filed in their behalf, as was required in the consolidation act, requires the construction that it was not necessary for each defendant to file a notice of pendency in order to preserve his lien, but that as to all liens which were in life at the time of the filing of the plaintiff's notice of pendency, and which had been properly executed, that notice was sufficient to preserve their rights, without a separate notice being filed by each one of the defendants, lienors.

The learned Attorney General urges that at the time of the commencement of this action, February 6, 1906, this action could not be maintained against the state—that is, at that time the state could not be sued without its consent—and that, while the Code of Civil Procedure was amended permitting the state to be made a party defendant in an action to foreclose a mechanic's lien for materials furnished or labor performed for a public improvement, that amendment did not take effect until April 19, 1906, and that no notice of the pendency of this action was ever filed after that amendment took effect; consequently the notice of pendency filed by the plaintiff at the time of the commencement of this action was a nullity. It is true that at the time of the commencement of this action the state could not properly be made a party defendant in an action of this character, but authority to make the state a party defendant in such an action was given by the Legislature by chapter 255, p. 548, Laws 1906. Code Civ. Proc. § 3400, as amended April 19, 1906. Section 5 of the lien law distinctly provides, and did at the time of the commencement of this action, that a person might have a lien upon the moneys of the state applicable to the construction of the improvement upon which the labor was performed, or for which materials were furnished. Lien Law, § 5, as amended February 20, 1902, p. 74, c. 37. Section 12 provided for the notice of lien which was to be filed with the Comptroller, and section 17 provided for the duration of the lien; and section 3418 of the Code of Civil Procedure provided as follows:

"If, in an action to enforce a lien on account of public improvements, the court finds that the lien is established, it shall render judgment directing the municipal corporation to pay over to the lienors so much of the funds or money which may be due from the state, or municipal corporation, to the contractor, as will satisfy his lien."

Reading sections 3398 and 3418 of the Code of Civil Procedure in connection with the provisions of the lien law, expressly authorizing liens against the funds appropriated for public improvements, it is perfectly clear that it was the intention of the Legislature that an action could be maintained against the state for the foreclosure of a lien before the amendment of 1906, and that that amendment was designed to correct a manifest oversight.

Section 17 of the lien law states the duration of the lien for materials furnished or labor performed for a public improvement, and further provides that it shall not continue for longer than three months, unless an action is commenced to foreclose it, etc., so that we see the peculiar situation of the Legislature distinctly authorizing the assertion of a lien against funds appropriated for public improvements, without providing the means for enforcing that lien, so that the amendment of 1906 was merely a statute to afford lienors a remedy to enforce an absolute right previously granted to them by the Legislature. In other words, by section 5 of the lien law, liens upon funds appropriated for public improvements were distinctly authorized. Lien Law, § 5, as amended by Laws 1902, p. 74, c. 37. Section 12 of the same act provided when and where the lien was to be filed, and section 17 provided for its duration and specified when an action must be commenced in order to enforce it. There was an absolute right to a lien which had been conferred by the Legislature, and for some reason, probably an oversight, the remedy by which that right could be enforced had not been provided for, and the amendment of April 19, 1906, to section 3400 of the Code of Civil Procedure was designed to afford that remedy. It had relation solely to the remedy of lienors, and not to their right to a lien, and, it relating solely to the remedy, it was retroactive in its nature, and a person entitled to a lien prior to its enactment could maintain the action because the amendment of April 19, 1906, related back to the time of the conferring the right to a lien; this amendment being designed simply to afford the remedy to enforce that right and it was retroactive in its effect. 26 Am. & Eng. Encyc. of Law (2d Ed.) 625; People v. Tibbets, 4 Cow. 384; People ex rel. Collins v. Spicer, 99 N. Y. 225, 1 N. E. 680; Lazarus v. Metropolitan Elevated R. R., 145 N. Y. 581, 40 N. E. 240; Rouge v. Rouge, 14 Misc. Rep. 421, 35 N. Y. Supp. 836. Moreover, I do not believe that the state is in any position to complain that the action was brought against the state before it could properly be sued. The action was commenced, making the state a party, and the summons and complaint were properly served and the Attorney General appeared and demurred, on the ground, among others, that the state could not be sued, and after the amendment to section 3400 of the Code of Civil Procedure had taken effect, April 19, 1906, the Attorney General withdrew his demurrer, and was permitted to do so without costs, and then appeared generally and answered in the case, making no reference in his answer to the fact that when the action was brought the state had improperly been made a party, and after all of that it seems to me that the state of New York is hardly in a position to claim that it was improperly sued, or that the plaintiff should have filed an additional notice of pendency after the amendment of April 19, 1906, had taken effect. It would have afforded no good purpose, it would have given the Attorney General no additional information, it would have been an entirely useless proceeding, and when the Attorney General appeared and answered in this case in May, 1906, without raising any question as to the right of the plaintiff to make the state of New

York a party defendant, that appearance and answer was equivalent to a new service of the summons.   Code Civ. Proc. § 424.

The Attorney General also urges that at no time was there any fund to which the liens in question could attach.  A great deal of evidence was offered by which it was attempted to show that the contractors had failed to perform the contract according to its terms, and that the state was justified in canceling the contract, but a careful reading of the evidence fails to convince me that the contractors were wholly at fault.  By the terms of the contract certain window frames and other articles were to be furnished by the state from the prison department, and they were not furnished when the contractors were ready for them and needed them.  They had notified the state authorities that these articles were needed, and by reason of certain delays, which are not satisfactorily explained, the contractors were delayed to some extent at least, and when the state of New York was to furnish certain articles for the use of these contractors and failed to do it when they were needed, and thus held up the work of the contractors, the state is not in position to say that the contractors must live up to the letter of the contract, but that the state could disregard it.  This contract was for the sum of $96,454.82, and was for the construction of 16 cottages and 16 barns scattered over a farm of 1,500 acres.  The work was started promptly after the contract was made, and whatever delays there were were occasioned quite as much by the state authorities in failing to furnish materials that they were to furnish, at the proper time, and by holding up the pay of the contractors, as it was by any negligence or omission on the part of the contractors.  This is one of those cases where perhaps both parties were more or less careless, and where neither party lived up strictly to the terms of the contract, but the delays in the first instance were occasioned by the failure when the contractors required them, and after that by various delays in paying the contractors as the result of which their credit was impaired and they were unable to pay their laborers, and the liens in question were filed, and the contractors were forced out and compelled to give up a contract which it seems they were ready and willing to perform.  I have no doubt whatever from this evidence that if the moneys had been paid by the state as provided by the terms of the contract, without various delays and holdups which are not satisfactorily explained, and if the state had furnished the materials from the prison department when the contractors were in need of them and had called for them, that this contract would have been substantially carried out by the contractors, and now, after these delays both in furnishing the materials and in promptly paying the moneys that the contractors had earned, and after depriving them of the benefit of their contract and after having canceled it, I do not believe that the state is in any position to say that it will not pay for the labor performed upon and materials furnished in the construction of these various buildings.

The contract provides that the contractors were to be paid 85 per cent. of the value of the materials and work monthly as the work progressed.  The moneys were not paid promptly even after the state architect had given his certificate to the effect that the contractors were

entitled to certain sums of money. The contract was to be completed May 31, 1905, but the state was at least partially to blame for these delays, and, long after the date on which it was to be completed, the contractors kept right on working, the state accepted their work, paid moneys after that date, and because of that fact, and also because of the fact that the delays were at least partially caused by the state itself, it should be deemed to have waived that part of the contract which required the work to be completed by the 31st day of May, 1905. At the time that the contractors were compelled to give up the work, two-thirds of it had been performed, and there is no good reason why, if the contractors had been permitted to continue, they would not have been able to have completed the contract within a reasonable time, and within the contract price, and it seems that the treatment of the contractors, both in the matter of withholding their moneys and in failure to furnish materials as they required them from the prison department, was at times unreasonable, and it seems to me that the liens which were properly filed, and which were in force at the time of the commencement of this action, and where the several defendants, lienors, answered, are enforceable against the fund appropriated for the public improvements upon which the labor and materials represented by the liens was expended, and not merely against the 15 per cent. reserve; for "a person performing labor for or furnishing materials to a contractor, his sub-contractor or legal representative, for the construction of a public improvement pursuant to a contract, by such contractor with the State or with a municipal corporation, shall have a lien for the principal and interest of the value or agreed price of such labor or materials, upon the moneys of the State, or of such municipal corporation applicable to the construction of such improvement, to the extent of the amount due or to become due on such contract, upon filing a notice of lien, as prescribed in this article." Lien Law, § 5, as amended by Laws 1902, p. 74, c. 37.

The objection raised to the liens of the Pennsylvania Lumber Company (No. 16), Queen City Brick Company (No. 4), C. E. Dibble Company (No. 3), Kellam & Shaffer (No. 5), and Hotchkiss Lumber Co. (No. 12) are overruled. The statute was substantially complied with in these several notices of liens as filed.

As to the lien of the C. E. Dibble Company, which it is claimed is of no value because it asserts a claim against real estate, an examination of the lien itself shows that the lien is claimed against the state of New York as owner of the real estate described in the lien; and, even though subsequently in the printed form there was a statement that a lien was asserted against the real estate, it was surplusage, and I think that the statement that the lien was asserted against the state of New York as owner of the property for which the materials had been furnished by the C. E. Dibble Company was sufficient. At all events, the lien was sufficient to give the State Comptroller notice of the claim of the Dibble Company, and it was entered by the Comptroller and state architect in their records as a lien, and it should be enforced. As to the lien of Kellam & Shaffer (No. 5), on August 17, 1905, the state architect issued his certificate stating that the contractors had performed work and furnished materials, and stated as follows:

"This certificate is made to satisfy a lien of Kellam & Shaffer, of Schenectady, if it is enforced," etc.

The amount of this certificate corresponds with the amount of the lien filed by Kellam & Schaffer, less interest, and it conclusively establishes the fact that, when it was issued, these contractors had earned and were entitled to that amount and it should be enforced.

With reference to the liens of the answering defendants hereinafter named, as well as the plaintiff, the lienors furnished labor or materials to the state of New York for the purpose of erecting the buildings on state lands at Rush. The state has had the benefit of their labor performed and materials furnished. The various liens filed substantially comply with the requirements of the lien law. They were sufficient to give ample notice to the state authorities that the various lienors had claims for the labor performed and materials furnished, and a liberal construction of the statute should be adopted to the end that when the lienors, as in this case, had in good faith either performed labor or furnished materials of which the state has had the benefit, that they may receive what is justly due them, and not be deprived of such moneys by a too nice and rigid construction of the lien law.

Judgment is therefore directed in favor of the plaintiff, and of the answering lienors, for the amounts established, in accordance with the findings herewith filed. The issues raised between the trustee in bankruptcy and the state of New York, by the answer of said trustee, and all questions of costs herein, are reserved, the same to be determined at Canandaigua, Monday evening, October 7, 1907, at 7 o'clock.

Let judgment be entered accordingly.