MONTGOMERY BROS. & Co., Plaintiff, *v.* G. L. COLE, INC., and Others, Defendants.

Supreme Court, Erie County, October 8, 1930.

*Edwin J. Culligan*, for the plaintiff and the defendant Seneca Clay Company.

*H. V. Pratt* [*Charles D. Newton* of counsel], for the defendant Union Free School District No. 1 of the Town of Wayland, Steuben County, New York, and others.

*Leland G. Davis*, for Cold Spring Construction Company.

*Lewis & Carroll* [*William C. Carroll* of counsel], for G. L. Cole and The Dwelle-Kaiser Company.

*Thurman L. Stoner*, for Bison Roofing & Supply Co., Inc.

*Coatsworth & Diebold* [*Charles Diebold, Jr.*, of counsel], for Kellogg Structural Steel Co., Inc.

*Rann, Vaughan, Brown & Sturtevant* [*J. Edmund Kelly* of counsel], for Hackmeister-Lind Company.

*W. N. Thwing*, for Onondaga Litholite Company and others.

CHARLES B. WHEELER, Official Referee. This action is brought to foreclose a mechanic's lien on funds in the hands of the Union School District No. 1 of the town of Wayland, growing out of the erection of an addition to the Wayland high school building in the village of Wayland, N. Y.

On August 3, 1928, the defendant G. L. Cole, Inc., entered into a contract with the board of trustees of said district to erect said building according to plans and specifications for the sum of $93,539. The G. L. Cole, Inc., hereafter termed the contractor, proceeded with the erection of the building. The contract provided for the completion of the building on or before January 15, 1929. This the contractor failed to do. The contract further provided the contractor should immediately discharge liens filed against the fund. Liens to the extent of nearly $35,000 were filed and not discharged and in April, 1929, the school board with the apparent consent of the contractor terminated the contract and took over the completion of the work, charging the contractor with the cost of such completion.

Certain funds remain in the hands of the school board and this action is brought to determine the amount and validity of such liens and their priority of payment.

The first question presented for the determination of the referee is the amount of the fund available for the payment of liens asserted by various claimants.

Counsel for Union School District No. 1 of the town of Wayland concedes that there is due and owing and in the hands and under the control of the school board the sum of $7,084.45.

The following is a summary statement showing the manner in which said amount is arrived at by said counsel:

| | | |
|---|---|---|
| Total amount of the Cole contract | $93,539 | 00 |
| Credit on contract by Cole | 3,000 | 00 |
| | $90,539 | 00 |
| (Attached to and made a part of the contract — see Exhibit 35) | 573 | 90 |
| Total of the Cole contract | $91,112 | 90 |
| Total paid to Cole before abandonment. $54,994 26 | | |
| Paid by the school board to complete the contract................ 29,034 19 | | |
| | 84,028 | 45 |
| Leaving a balance due from the school board, subject to payment of liens | $7,084 | 45 |

It will be noted that this statement of $7,084.45 includes the sum of $573.90 allowed by the board for extras furnished by the contractor, to wit, for the following items:

| | | |
|---|---|---|
| Parlocking 380 feet, at ten cents per foot | $38 | 00 |
| Engineer setting levels for sewer | 20 | 00 |
| One barrel cement | 1 | 60 |
| Backing stone front | 37 | 00 |
| Extra slate blackboards | 283 | 50 |
| Tile rail to stage | 16 | 80 |
| Plastering rail | 18 | 00 |
| Concrete base | 18 | 00 |
| Wood rail | 42 | 00 |
| Painting | 14 | 00 |
| Enlarging door opening on first and second floors between old and new buildings | 85 | 00 |
| Total | $573 | 90 |

It will be also noted that in the above statement the counsel for the school board in his computation showing the amount admittedly due on the contract has deducted from the contract price of $93,539

the sum of $3,000 as a credit on said contract by virtue of the letter of the G. L. Cole, Inc., to the board of education dated July 31, 1928, attached to and forming a part of the contract.

The referee is unable to concur in this claim for deduction by the school board. The letter refers to certain contemplated changes in the specifications and makes deductions by reason of these changes amounting to $3,000. After this letter was written and on August 3, 1928, the contract itself was made to do the work for $93,539. The contract itself refers to the letter and statement attached to the contract and states the board has " the privilege of restoring any of the omitted items listed in the attached statement at the same price as allowed in the statement for the omissions of the same provided the contractor is notified of such restoration before the work has progressed to a point where the restoration would create a hardship to the contractor." It is quite plain, therefore, that the $93,539 specified in the contract was the price agreed on for doing the work with the omissions stated, and that if it was subsequently determined to include the items omitted, then the contract price was to be increased just so much.

Therefore, the referee finds that there is in the hands of the board subject to the payment of liens and assignments the total sum of $10,084.45 plus certain claims for extras not conceded by the school board. This sum of $10,084.45 does not include a payment made by the board to Rogers & Tenbrook of $8,220.88 which is challenged by lienors as unauthorized.

The referee will refer to this payment later in his opinion. If this sum of $8,220.88 is added to the sum of $10,084.45 we then have a total for distribution of $18,305.33.

In addition to this we are of the opinion that certain items for extras should be added which the counsel for the school board is not ready to concede. The referee is of the opinion that the fund should be charged with the following extras not so allowed or conceded, to wit:

| | |
|---|---:|
| Claim for changing a certain arch.................... | $78 00 |
| For raising floor in the girls' shower................. | 89 00 |
| For concrete furnished.............................. | 290 00 |
| For engineers' stoking building..................... | 50 00 |
| | $507 00 |

This sum added to $18,305.33 makes a total of $18,812.33.

Other claims for extras are disallowed.

One of the important questions in this case is the proper disposition of the item of $8,220.88 above referred to as the claim of Rogers & Tenbrook. The history of this claim is that Rogers &

Tenbrook is a firm doing business at Wayland. This firm furnished the contractor material for the doing of his work which on February 1, 1929, amounted to $8,220.88. On January tenth Rogers & Tenbrook filed with the clerk of the school board and with its treasurer an assignment of $8,000 in amount of moneys payable to the contractor by reason of his contract for the erection of the school building. This assignment is without date, but the referee is of the opinion that the evidence justifies the finding that the assignment was in fact executed within ten days of its filing. However, on February 1, 1929, Rogers & Tenbrook filed a notice of lien with the clerk and treasurer for $8,220.88. This was for the full amount owing the firm. However, this notice of lien was not signed at all, but attached to and forming a part of the notice was a verification of the notice of lien signed and sworn to by a member of the firm. Later and on March 18, 1929, Rogers & Tenbrook filed a second notice of lien for the same amount. This second lien was doubtless filed to cure defects, if any existed, in the notice of lien filed February 1, 1929.

Other lienors contend that both the assignment for $8,000 and notices of liens are invalid as against them for reasons that will be later discussed in this opinion. If their contentions are right, the effect will be to give such objecting lienors prior claims to the fund over the claim of Rogers & Tenbrook.

However, it appears that the school board actually paid Rogers & Tenbrook $8,220.88, the amount of their claim, under an agreement that if the court should find the payment unauthorized the firm would refund to the board the amount so paid.

This brings the referee to the discussion of the question as to whether the assignment filed January tenth is invalid.

It is urged as one ground of invalidity that it was not filed with the proper party, in that it was filed with the clerk of the board instead of with the president of the board, and did not, therefore, comply with the requirements of section 16 of the Lien Law (as amd. by Laws of 1929, chap. 515; since amd. by Laws of 1930, chap. 859).

Lienors contend that this order or assignment was invalid and inoperative as to them because it was not served on the president or chairman of the school board as required by section 16 of the Lien Law. This section provides that no such order or assignment shall be valid " unless such assignment or order, or a copy thereof, be filed within ten days after the date of such assignment of contract, or such assignment of money, or such order, with the head of the department or bureau having charge of such construction, and with the financial officer of the municipal corporation or other officer or person charged with the custody and disbursement of the corporate

funds applicable to the contract for such public improvement, and such assignment or order shall have effect and be enforceable from the time of such filing, and no such assignment or order shall have any validity until the same shall have been so filed." The Education Law of the State provides for the organization, government and powers of school boards such as the one involved in this case.

The trustees became a corporate body (§ 270). There shall be a clerk whose duty shall be to "preserve all records, books and papers belonging to his office" (§ 250). The treasurer is made "custodian of all moneys belonging to the district from whatever source derived." "No moneys shall be paid out or disbursed by such treasurer except upon the written orders of a sole trustee, or a majority of the trustees" (§ 251). I find in the law no mention of a president or chairman of the board. Doubtless they may elect a chairman to preside at their meetings, but he is given no distinct powers above any other member of the board. In fact all official action "*must be exercised by them as a board.*" (§ 273.) It would seem, therefore, that official notices should be addressed to the trustees as a board and the board as such within the meaning of the statute is the department or bureau having charge of the public improvement mentioned in section 16 of the Lien Law. The assignment to Rogers & Tenbrook was delivered to the treasurer, a "financial officer" charged with the disbursements of the fund. It was also delivered to and filed with the clerk of the board, whose duty it was to keep and preserve its records. It seems to the referee that all the substantial requirements of section 16 were complied with. The two main purposes of the law were observed. It is that the board should have notice of the order or assignment made, and that it should be filed so that others dealing with the contractor might have notice of its existence as determining whether they would extend further credit to the contractor. The treasurer had notice, and the board had notice. They knew of its existence. We think filing with the clerk was notice to the board as well as the delivery of the assignment to a member of the board. If third parties desired to learn of the existence of assignments or liens the proper person to whom to go for such information was to the clerk of the board, who is made custodian of the board's records and papers.

In a quite similar case the Court of Appeals has held that delivery of a notice of lien to the clerk of a board of school trustees was delivered to the board itself. (*Bell* v. *Mayor,* 105 N. Y. 139.)

In the case of *Albany B. S. Co.* v. *Eastern R. & S. Co.* (235 N. Y. 432, 435, 436) it was also held that a filing with the clerk of the common council was a compliance with the section although the president of the council and no member of the council were personally served. Judge CARDOZO in that case learnedly discussed the question and

said that the statute meant " the notice must reach the chief of the department through his designated custodians," and that such was its clerk.

The referee, therefore, finds that the clerk of the board was the proper person with whom the notice should be filed.

A more serious question, however, is raised as to the validity of the assignment on the ground that the paper has no date. It is argued that under the provisions of section 16 an assignment to be valid must be filed within ten days from its " date," and inasmuch as the assignment lacked a date it did not comply with the statute. By implication at least the statute required the instrument to be dated. One of the purposes of the statute requiring a date was to enable those consulting the record to see at once whether or not the requirements of section 16 as to filing within ten days had been complied with. There was nothing to show in this case whether the assignee had so complied. It necessitated inquiry outside the record to ascertain the truth. We take it the burden rested on the assignee to show affirmatively he had met the requirements of the statute. This did not appear by the papers filed, and when the statute emphasizes the " date " we think the omission of the date fatal to its validity. We need only refer to the recent case of *Glens Falls Portland Cement Co.* v. *Van Wirt Construction Co.* (225 App. Div. 159) in which the court lays much stress on the importance of the word " date " as used in the statute.

The precise question now before the referee so far as his efforts are able to discover does not seem to have been passed on by the courts of this State; but the referee finds as matter of law the assignment inoperative for the defect specified. However, whether the referee is right or wrong in his conclusion it makes little difference in the final result for the reason that we hold although the assignment is invalid nevertheless the notice of lien filed February first is valid and by virtue of that notice Rogers & Tenbrook were entitled to payment out of the fund which is or was sufficient in amount to meet their claim. We now proceed to a discussion of the validity of the notice of February 1, 1929.

It is further contended that the notices of lien, both the first and second, filed by Rogers & Tenbrook are invalid for the reason that in them the claimant attempts to assert a lien against the land and buildings, and that the statute gives claimants only a lien on the fund itself.

The objection raised to the lien of Rogers & Tenbrook applies equally to the liens filed by the Cold Springs Construction Company, the Kimmel Hardware Company and by Theodore J. and Charles H. Capron. The contention is based on the form and

contents of the notices filed, which follow the form used by the Cold Springs Construction Company and reads: " Take notice that Cold Springs Construction Company  *  *  *  has a lien against School District No. 1 of the Town of Wayland  *  *  *  as owner of the buildings hereinafter described, which said lien is against said buildings and also against the lot containing about two acres of land upon which said building stands for the sum of $2,106.25."

Then follows a more particular description of the lot. The notice closes with the statement that said company has a lien " upon the said building and addition thereto, and upon the lot above described upon which said building and addition stands for the amount unpaid."

The notice contained also the usual and proper information as to the materials furnished the contractor, and the price agreed therefor and that the same had gone into the construction of the building in the process of erection.

No mention is made in the notice filed that the lien is asserted against the fund in the school board's hands, but the notice was evidently drawn with the idea that the filing of the notice gave the claimant a lien on the real property in question just as though the building was private property.

It is well established that in matters of public improvements such as this no contractor or materialman can acquire a lien on the realty itself, but only on the fund provided for the payment of the cost of the improvement. (*Clapper* v. *Strong,* 90 App. Div. 536; *Terwilliger* v. *Wheeler,* 81 id. 460; *Italian Mosaic Co.* v. *Niagara Falls,* 131 Misc. 281, 287.)

It is, therefore, argued that the notices in question were so defective that they created no lien on the fund itself.

This does not necessarily follow. While there was an attempt to create a lien against realty, nevertheless the notices contained a statement of all the facts required by the statute to create a lien on the fund in the board's hands.

Under such circumstances it has been held in a case precisely like that now under consideration, that the notice was sufficient to give a lien on the fund itself, and that the statement that the lien was asserted against real estate may be treated as surplusage. (*Newman Lumber Co.* v. *Wemple,* 56 Misc. 168, 181.)

The court said that it was of the opinion that the statement that the lien was asserted against the State of New York as owner of the property for which the materials had been furnished was sufficient.

The case above cited is the only case the referee has been able

to find squarely deciding the questions raised. Counsel attacking the liens in question cite a decision made by this referee in the case of *Italian Mosaic Co.* v. *Niagara Falls* (131 Misc. 281, 287).

A reading of the opinion in that case will show that this referee did not hold such a notice invalid. The question was raised and the court held the notice there created no lien on real estate and then held the notice void for other reasons, but not that its form precluded its being sufficient to create a lien on the fund.

The notices now under consideration were sufficient to advise any one that a lien was claimed against the school board and we feel constrained in view of the decision in *Newman Lumber Co.* v. *Wemple* (*supra*) to hold valid the three liens attacked, which we now do, particularly in view of the requirements of section 23 of the Lien Law (as amd. by Laws of 1929, chap. 515) requiring the article touching liens " to be construed liberally to secure the beneficial interests and purposes thereof."

The lien of Rogers & Tenbrook filed February 1, 1929, is further questioned and claimed invalid for the reason that the notice of lien was not signed by the claimants.

Such is the fact. It is unsigned, but attached to the notice and forming a part of it is a verification of the statements of the notice in the form prescribed by the statute, and sworn to by a member of the firm. Does the failure to sign the notice itself invalidate the lien? An examination of the statute discloses that there is no express requirement that the notice shall be signed but the statute does require it to be verified, which was done. The precise question was up for adjudication in *Moore* v. *McLaughlin* (66 Hun, 133), and it was there held that the statute did not require a signature to the notice, but that the verification which followed the words of the act was sufficient. This case is cited with approval in *Kingston* v. *M. S. Construction Corporation* (222 App. Div. 837). (See, also, as bearing on the question, *Reeves* v. *Seitz*, 47 App. Div. 267.)

In view of these authorities the referee finds that the notice of lien filed by Rogers & Tenbrook on February 1, 1929, to be valid, and that the objections raised cannot be sustained. As a result of the whole matter the referee finds the following liens on the fund to be established in the following order and for the following amounts:

*First.* The Kellogg Structural Steel Company by virtue of an assignment dated January 4, 1929, for $1,170 and interest.

*Second.* Theodore J. Capron, John Kimmel, Joseph F. Weinhart and H. V. Pratt by virtue of an assignment dated January 26, 1929, filed the same day for $1,200 to each of said parties the sum of $300, with interest.

*Third.* Rogers & Tenbrook by virtue of a lien filed February 1, 1929, at two P. M. for $8,220.88.

*Fourth.* Cold Springs Construction Company by virtue of lien filed February 1, 1929, at three P. M. for $2,106.25, with interest.

*Fifth.* Kimmel Hardware Company by virtue of lien filed February 2, 1929, at seven-thirty P. M. for $573.69.

*Sixth.* Theodore J. Capron and Charles M. Capron by virtue of a lien for $470.53, with interest, filed February 9, 1929.

*Seventh.* Montgomery Bros. & Co., Inc., by virtue of a lien filed February 23, 1929, for $1,204.25, with interest.

*Eighth.* Hachmeister-Lind Company by virtue of an assignment March 5, 1929, filed March 7, 1929, on which is due $7,712.59 and interest.

The claims above specified are more than sufficient in amount to exhaust the fund available for the payment of liens and assignments; and will exhaust the same before the eighth claim specified can be paid in full. It is, therefore, unnecessary in this opinion to designate further the liens filed and established, but such subsequent lienors are entitled to enter personal judgments against the contractor for the amount of their respective claims as proven.

The judgment to be entered should be so drawn that the claim of Rogers & Tenbrook already paid should not be paid a second time.

The attorney for the plaintiff is entit\`ed to a full bill of costs, the attorneys for other lienors to a trial fee.

Let a formal decision be drawn for the signature of the referee in conformity with the views above expressed.