JOHN J. O'NEILL, Plaintiff, *v.* SEGLIN CONSTRUCTION COMPANY, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, September 20, 1935.

*J. J. Dooling* [*Samuel Gottlieb* of counsel], for the plaintiff.

*Halperin & Muney* [*Harry J. Halperin* of counsel], for the defendant Seglin Construction Company, Inc.

*Medina & Sherpick* [*William F. McNulty* of counsel], for the defendant Standard Accident Insurance Company.

*Edward M. Swinburne* for the defendants Ciafardoni and others.

COTILLO, J.   The plaintiff, a bricklayer and a member in good standing of the Bricklayers, Masons and Plasterers International Union of America, having performed work, labor and services in the erection and completion of a new building at the Kings Park State Hospital, Kings Park, Long Island, filed a notice of lien for the value of such work, labor and services.   Thereafter this suit was instituted against the defendants Seglin Construction Company, Inc., hereinafter called Seglin, and the Standard Accident Insurance Company, hereinafter called Standard, and various individual defendants, all bricklayers and members of the above union who have also filed liens for wages, to foreclose the lien as filed.   Seglin was the contractor for the erection of the above-named building, and Standard the company which bonded the lien.

It is undisputed that Seglin contracted with the State of New York for the erection and completion of a public improvement at Kings Park State Hospital and employed the individual bricklayer lienors to do the brick work on the project.   At the time the work was in progress there was a dispute between the union and the Mason Builders Association as to the wage scale to be fixed and paid to members of the union.   An agreement to submit the controversy to arbitration was agreed upon.   Seglin, on May 11, 1933, entered into an agreement with the union's New York executive committee as follows:

" WHEREAS, the agreed rate of $1.65 per hour for Bricklayers within the territory of the Subordinate Unions terminated on May 1st, 1933; and the determination of an agreed rate of wages for Bricklayers on and after that date is now the subject of Arbitration between the Subordinate Unions and the Mason Builders Association of New York;

" It is hereby agreed that the Subordinate Unions will furnish to and the Contractor will hire only Bricklayers who are members of the Bricklayers', Masons' & Plasterers' International Union. of America, to man any job which the Contractor may undertake to do within the territorial jurisdiction of the Subordinate Unions; the Contractor will pay the members of the Subordinate Union manning its said job wages at the rate of $1.25 per hour for eight hours per day, until the decision of the arbitrators in the pending arbitration proceedings between the Subordinate Unions and the Mason Builders Association of New York, and on and after the making of the award by the arbitrators the Contractor will pay to the

members of said Subordinate Union manning its said job, wages at the rate fixed in said award."

The instrument then concluded with a paragraph which charged the contractor, Seglin Construction Company, Inc., with the duty of holding in escrow the difference between the wages actually paid the bricklayers employed on this public project, and the amount that they would be entitled to receive if paid at the rate of one dollar and sixty-five cents per hour; in the event the award of the arbitrators provided for a rate in excess of one dollar and twenty-five cents per hour, the contractor was obligated to pay that difference from the escrow moneys.

The board of arbitrators, on August 4, 1933, determined and handed down their final decision and award fixing the rate of wages for bricklayers at one dollar and sixty-five cents an hour. The failure of Seglin to pay the difference between one dollar and twenty-five cents an hour and one dollar and sixty-five cents caused the filing of the liens and the institution of this suit.

The defendants Seglin and Standard not only deny that a valid award was made in this arbitration proceeding on August 4, 1933, but affirmatively allege that the proceeding in question terminated in another and entirely different award on July 15, 1933, and that the arbitrators thereupon became *functi officio* and without power to act further in the matter. The answer of these defendants also affirmatively alleges that the so-called award of August 4, 1933, was null and void on the ground that it was procured by undue means and evident partiality on the part of the arbitrators purporting to make the same and, more particularly, by misconduct on the part of these arbitrators in following the dictation of the Secretary of Labor of the United States rather than their own judgment based upon the evidence submitted to them. By way of an additional affirmative defense it is alleged that the so-called award of August 4, 1933, was null and void because the arbitrators were not sworn in the manner provided by section 1452 of the Civil Practice Act, the requirement of the statute in this respect not having been waived by the written consent of the parties or their attorneys. It is further alleged that the Seglin Construction Company, Inc., duly revoked its agreement to be bound by the award in this arbitration prior to the rendition of the so-called award of August 4, 1933.

Finally, as more fully appears from the stipulation entered into in advance of trial, the notices of lien of the plaintiff and several of the defendant lienors were concededly filed in the office of the Comptroller of the State of New York either on November 18 or November 20, 1933, or over three months prior to the commence-

ment of the present action, it having been conceded upon the trial that the summons and complaint herein were not served upon the Seglin Construction Company, Inc., until February 23, 1934, and upon the Standard Accident Insurance Company until February 26, 1934. As a consequence these liens, as affirmatively alleged in the amended answer of the defendants Seglin Construction Company, Inc., and Standard Accident Insurance Company, have lapsed and been discharged by operation of law (Lien Law, §§ 18, 21).

The court will first consider the defendants' contention that the liens have lapsed and have been discharged by operation of law. In determining this question the rights of the plaintiff and the defendant lienors must be kept separate. The liens of all were filed between November 18, 1933, and January 20, 1934. The individual defendants served a notice of appearance in this action on February 16, 1934, and a notice of pendency was filed on February 17, 1934. Seglin was served on February 23, 1934, and Standard on February 26, 1934. Sections 18 and 21 of the Lien Law, as applicable here, provide as follows:

" § 18. Duration of lien under contract for a public improvement. If the lien is for labor done or materials furnished for a public improvement, it shall not continue for a longer period than three months from the time of filing the notice of such lien, unless an action is commenced to foreclose such lien within that time, and a notice of the pendency of such action is filed with the comptroller of the state or the financial officer of the municipal corporation with whom the notice of such lien was filed, or unless an order be made by a court of record, continuing such lien, and a new docket be made stating such fact."

" § 21. Discharge of lien for public improvement. A lien against the amount due or to become due a contractor from the State or a municipal corporation for the construction of a public improvement may be discharged as follows: * * *

" 2. By lapse of time as follows:

" (a) When three months have elapsed since the filing of the notice of lien, unless, before the expiration thereof, either an order continuing said lien has been filed in the office where the notices are filed, or a notice of the pendency of an action to enforce said lien has been filed as provided in section eighteen of this article."

Subdivision 2 of this section was enacted by section 12 of chapter 859 of the Laws of 1930.

In construing the effect of this section it is necessary to consider the new section of this Lien Law — section 21-a — which reads as follows:

" § 21-a. Vacating lien for a public improvement, by order of court. A lien against the amount due or to become due a contractor from the State or a municipal corporation, for the construction of a public improvement, may be vacated and canceled by an order of the Supreme Court. Before such order shall be granted, a notice shall be served upon the lienor personally or, in such manner as the court may direct. Such notice shall require the lienor to commence an action to enforce the lien within a time specified in the notice, not less than thirty days from the time of service, or show cause at a Special Term of the Supreme Court in the judicial district embracing the county wherein the notice of lien is filed, at a time and place specified therein, why the notice of lien should not be vacated and canceled of record. Proof of such service and that the lienor has not commenced the action to foreclose such a lien, as directed in the notice, shall be made by affidavit, at the time of applying for such order."

The Legislature has in recent years liberalized the Lien Law in favor of the lienor, and in attempting to ascertain the intent of the Legislature it is necessary to read all the sections of the law, as one section standing alone might permit one construction, but when read in the light of the related sections is capable of an entirely different construction (*Alberene Stone Co.* v. *Board of Education, City of New York*, 153 Misc. 812; affd., 244 App. Div. 711):

" It is an elementary canon of statutory construction that all portions or parts of an act must be considered together and that even though a statute be divided into many sections, each section must be construed in the light of the other sections and each section is to be kept subservient to the general intent of the whole enactment.

" As was stated in *Ansonia B. & C. Co.* v. *New Lamp-Chimney Co.* (53 N. Y. 123, at p. 125): ' This twenty-first section may not stand alone. It is to be read and applied in connection with every other section of the act. All must have their due and conjoint effect. Each must be so far qualified and limited by each other so that all may have operation in harmony, if so it may be. And each must be kept in subservience to the general intent of the whole enactment.'

" In *People ex rel. Mason* v. *McClave* (99 N. Y. 83) the court says (at p. 89): ' The principal purpose of interpretation is to ascertain the intent of the lawmakers, and in statutes as other instruments, clauses, in themselves absolute and unqualified may be limited by other clauses and provisions. The whole context of a statute may be examined to ascertain the meaning of a particular clause, and this becomes necessary where the meaning is doubtful, or where by giving a particular clause full effect it would come in conflict

with other clauses. A statute, like a will or contract, is to be construed as a whole, and in applying this principle of construction, it is not material in which order provisions, which at first blush seem contradictory, are placed. The meaning is to be collected *ex antecedentibus et consequentibus*, and a later provision may be qualified by a prior one, or the contrary.'

" Counsel for Grinnell argues that only subdivision 6 of section 21 should be taken into consideration. However, the courts of this State have time and again ruled that a particular provision of an act is not to receive a special meaning at variance with the general purpose and spirit of the entire act. (*People* v. *Long Island R. R. Co.*, 194 N. Y. 130.) " (p. 816).

Section 21-a, newly added by the Laws of 1930, clearly shows that the design and intent of the Legislature was to make the filing of the notice of pendency to foreclose, within three months after the filing of the lien, sufficient in and of itself to continue the validity of the lien. This section manifestly was intended to make up for the elimination of the provision of section 21, to the effect that the liens were to lapse if no action had been commenced to enforce the liens within three months. The Laws of 1930 thus placed the burden upon the lienors of filing the notice of pendency within three months, and then provided a remedy, under section 21-a, whereby the lienors could be compelled to bring an action upon thirty days' notice, or else have their liens vacated. All of these sections, considered and construed together, as they must be, yield the conclusion that the lienor's rights are safeguarded and continued by meeting the sole prerequisite, that is the filing of a notice of pendency within the three months' period. It was not necessary that in addition to the filing of the notice of pendency within the three months, all defendants likewise be served with process within the same period. If that were so, then the 1930 amendment to section 21 of the Lien Law (§ 21, subd. 2, par. [a], *supra*), supplanting the earlier provision, would be meaningless and unintelligible; nor would there have been any necessity for section 21-a. The validity of plaintiff's lien is sustained by the undisputed fact that within three months after the filing thereof he filed a notice of pendency of this action.

The court feels that, as regards the validity of the defendants' liens, specific provision is made in section 18 of the Lien Law, which reads as follows: " If a lienor be made a party defendant in an action to enforce another lien, and the plaintiff or such defendant has filed a notice of the pendency of the action within the time prescribed in this section, the lien of such defendant is thereby continued." This section provides that the mere filing of the notice of pendency within three months is sufficient to continue the lien

of a lienor who is made a party to an action, and their liens were thus fully safeguarded by the filing of the plaintiff's notice of pendency on February 17, 1934, which specifically names each defendant lienor as a party defendant. This phase of the litigation has been passed upon in *Newman Lumber Co.* v. *Wemple* (56 Misc. 168, at p. 175), where the court held as follows: " When one notice of pendency was filed with the proper officer, in this case with the Comptroller of the State, setting forth fully, among other things, the names of the defendant lienors, so that anybody interested, by examining that document, could have knowledge of the pendency of the action, and that these several lienors had claims or liens upon the funds sought to be reached, that notice was sufficient, without requiring each defendant to do precisely the same thing the plaintiff had done when he filed his notice, for the filing of a *lis pendens* of each one of the defendants could not possibly afford greater notice to persons interested than was accomplished by the filing of the *lis pendens* of the plaintiff."

Having disposed of the second defense as above, the court will now take up the first defense as to the validity of the award of August 4, 1933. Concededly, that was the only award that was delivered by the arbitrators in the arbitration proceeding here involved. In this court the contesting parties to the arbitration, through their representatives, acknowledged that that was the award received by them. One of the contesting parties, The Contractors' Association, thereafter sought to challenge its validity, first, by the institution of a special proceeding in this court, and then by the commencement of an action in equity in this court. The special proceeding was unsuccessful. The equity suit was abandoned upon the parties' voluntary agreement to submit the matter to the National Labor Board, a Federal body. That impartial tribunal affirmed the validity of said award of August 4, 1933. The contesting parties thereupon themselves acknowledged the award's validity, recognized it as valid and binding, and acted upon it. During all this time the contractor here, the Seglin Construction Company, Inc., seemingly remained passive. Its president, who was in court, did not take the stand to testify that he had at any time either joined in the protest or objected to the submission of the question to the National Labor Board. Only after the validity of the award had already been determined, did the contractor attempt to assail it here. It may be that the contracting company felt that it could safely gamble upon the outcome of the determination of the Board's accepting it, if favorable, and repudiating it if adverse.

Under all these circumstances, the contractor should not be permitted to complain about the validity of the award. But be that as it may, I find, as a fact, that the award rendered on August 4, 1933, was the only valid award rendered in the arbitration proceedings between the Mason Builders' Association and the subordinate unions.

Judgment is directed in favor of the plaintiff and defendant lienors. Settle findings of fact and conclusions of law together with proposed judgment in accordance with the foregoing.