JOHN BELL, Respondent, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, et al., Impleaded, etc., Appellants.

A contract made with the trustees of public schools of a ward in the city of New York for the construction of a school-house, is a contract with an incorporated city within the meaning of the act of 1878 (chap. 315, Laws of 1878), giving a lien to any person performing labor or furnishing materials in the performance of a contract with the city upon moneys in the control of the city, due or to grow due under the contract.

*Dunnat* v. *Mayor, etc.* (66 N. Y. 585), and *Ham* v. *Mayor, etc.*, (70 N. Y. 459), distinguished.

The board of education is, for the purposes of the act, the department or bureau having charge of the work in which to file the notice of claim, and a filing of such notice with the clerk of the board and with the city comptroller is a fulfillment of the requirements of the act in that respect.

(Argued March 2, 1887; decided March 22, 1887.)

APPEAL from judgment of the General Term of the Court of Common Pleas, in and for the city and county of New York, entered upon an order made November 10, 1885, which affirmed judgments in favor of respondent entered upon the report of a referee.

The nature of the action and the material facts are stated in the opinion.

*David J. Dean* for appellants. The board of education and school trustees of the city of New York constitute an agency for the administration of public duty not pertaining to the corporate functions of the city, but administered in behalf of the people of the State, and the board is, therefore, independent, capable of making its own contracts, and liable to be called upon to respond to the liabilities which it incurs. (*Ham* v. *Mayor, etc.*, 70 N. Y. 459; *Miller* v. *Mayor, etc.*, 3 Hun, 35; *Tredwell* v. *Mayor, etc.*, 1 Daly, 123. *Gildersleeve* v. *Bd. of Education*, 17 Abb. 201; *Bell* v. *Vanderbilt*, 67 How. 332.) The notices filed in June and July were ineffectual to create any lien because at that time there was no

statutory provision authorizing a lien. (*Ely* v. *Holton*, 15 N. Y. 595; *People* v. *Carnal*, 6 id. 463; *Benton* v. *Wickwire*, 54 id. 226.) The board of education is not a " department" or " bureau" of the city government. (*Ham* v. *Mayor, etc.*, 70 N. Y. 459; *Dannat* v. *Mayor, etc.*, 66 id. 585; *McClusky* v. *Cromwell*, 7 id. 602; *Benton* v. *Wickwire*, 54 id. 226; *Roberts* v. *Fowler*, 3 E. D. S. 632; *Mushlitte* v. *Silvermann*, 50 N. Y. 360; *Rafter* v. *Sullivan*, 13 Abb. 263; *People* v. *Comptroller*, 77 N. Y. 45.) The city paid the $11,000 before the passage of the act which gave the plaintiff right to a lien, and the city thus acquired a right to be free from any other claim or demand in respect thereto. (*Dash* v. *Van Kleek*, 7 Johns. 477; *Jackson* v. *Van Zandt*, 12 Johns. 169; *Palmer* v. *Conley*, 4 Den. 374; Dwarris on Stat. 677.)

*Joseph Fettretch* for respondent. Filing the notice of claim with the clerk of the board of education was a sufficient filing with the head of the " department " or " bureau." (*Murphy* v. *City of Buffalo*, 38 Hun, 49.) If the legislature possess the power to authorize an act to be done, it can, by a retrospective act, cure the evils which existed, because the power thus conferred has been irregularly executed. (*Thompson* v. *Lee Co.*, 3 Wall. 327; *People* v. *Mitchell*, 35 N. Y. 552; *Hardenburg* v. *Van Keuren*, 4 Abb. [N. C.] 48.) The doctrine that statutes which, even by their terms are not retrospective, shall not be so construed, does not apply to remedial statutes which may be of a retrospective nature, provided they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy by curing defects and adding to the means of enforcing obligations. (*Brower* v. *Bowers*, 1 Abb. Ct. Ap. Dec. 223.) There is a distinction between the change of a contract and a change of the remedy to enforce the performance of the contract. (*Stocking* v. *Hunt*, 3 Denio, 276, 277; *Van Rensselaer* v. *Snyder*, 3 Kern. 299.) It cannot be claimed that the obligations of contracts are impaired so long

as contracts were submitted, without legislative interference, to the ordinary and regular course of justice, and the existing remedies were preserved in substance and with integrity. (*Holmes* v. *Lansing*, 3 Johns. Cas. 74, 75; *Morse* v. *Gould*, 1 Kern. 281, 286, 287; *Curtis* v. *Whitney*, 13 Wall. 70.) The act of 1881 authorized the enforcement of plaintiff's claim under the act of 1878. (*People ex rel. Wetherbee* v. *Sup'rs*, 70 N. Y. 235; *Stillwell* v. *Mayor, etc.*, 19 Abb .Pr. 387.) It was competent for the legislature to pass the law of 1881, and to render valid proceedings which would be otherwise invalid. (*People ex rel. Newburgh* v. *Plank-road Co.*, 86 N. Y. 1.) The defendants, the mayor, etc., are to be treated as parties to the contract. (*Mech. & Tr. Bk.* v. *Mayor, etc.*, 15 W. Dig. 263.)

PECKHAM, J. This action is brought against the defendant, the mayor, etc., to foreclose a lien upon certain moneys alleged to be in the hands of the comptroller of the city of New York for the purpose of paying the amount due on a contract between the defendant, Vanderbilt, and the defendants Surland and others, who were trustees of public schools in the twelfth ward of the city of New York, whereby Vanderbilt was to do the mason work on a building to be erected for school purposes in such ward. The other defendants were lienors who filed their claims upon the same moneys. The plaintiff and the other lienors were individuals who furnished the materials to Vanderbilt to enable him to complete his contract above referred to, and such materials went into the construction of the school-house.

Upon the view taken by us in this case the only question in it arises upon the construction of the act (chap. 315, Laws of 1878) entitled "An act to secure the payment of laborers, mechanics, merchants, traders and persons furnishing materials towards the performing of any public work in the cities of the State of New York." It is conceded if that act apply to this case the judgment herein is right. Prior to its passage there was no law by which any lien could attach upon public

buildings or upon the moneys due from a city to the contractor who did any work thereon. The courts had held that such great inconvenience might result from the sale of public buildings to satisfy a lien that express and clear provisions of the statute must be shown to permit it. (*Darlington* v. *Mayor, etc.*, 31 N. Y. 164; *Poillon* v. *Mayor, etc.*, 47 id. 666; *Leonard* v. *City of Brooklyn*, 71 id. 498.) To give some security to those who furnished supplies or did work for the contractor on public works in cities this act was passed. The counsel for the city challenges this contract as not being made with an incorporated city, as required by the provisions of the act, for he says that the school trustees who signed it were part of the educational system of the State and did not represent the city or act in its behalf, and he cites the well known cases of *Dannat* v. *Mayor, etc.* (66 N. Y. 585), and *Ham* v. *Mayor, etc.* (70 id. 459), and several others of like nature to prove the correctness of his position. The Dannat case was where the contractor, to do the carpenter work on a school-house in New York, bought lumber of plaintiff and gave him an order on the board of public instruction for his payment when the next installment under his contract should become due, and the order was presented to and left with the board. After the next installment became due the plaintiff presented his claim to the comptroller and demanded its adjustment by him, which he neglected to make and also refused to pay the amount of the order. This court held that the system of audits and payments of accounts provided by the act of 1873, reorganizing the government of New York, applied to all payments from the city treasury, including payments from school moneys upon contracts of the board of education, and that the act of 1851, relating to the common schools of the city, remained in force.

Thus, to obtain payment upon a contract with the board of education, it was necessary for the board to give its draft on the chamberlain as prescribed in the act of 1851, and this was to be delivered by the payee to the finance department as its voucher, and the other requisites of the act of 1873 were to

be complied with before the payment could be secured.' This was not done in that case, and consequently the plaintiff was not successful in his action. The case is cited to show the separate and independent character of the board of education and that it drew its own drafts and had its own system outside of the city government.

The Ham case was that of an action brought against the city to recover damages for injuries alleged by the plaintiff to have been sustained by him to his property in a certain house because of the alleged negligent acts of some of the employes of the department of public instruction. The liability was sought to be placed upon the doctrine of *respondeat superior*, which rests upon the right of the employer to select his servants and to discharge them, and, while in his service, to direct and control them. All this was held to be lacking in that case, and that the department of public instruction, although formally constituted a part of the city government (by the law as it stood in 1871, subsequently, and in 1873, altered), yet it was charged with the performance of duties, not local or corporate, but relating and belonging to an administrative branch of the State government and that such board had exclusive authority as to the employment and control of subordinates and servants.

Both these cases may and should stand in full force and still it can be held that this contract was made with an incorporated city within the meaning of this act of 1878.

In the first place there can be no reason given for intentionally excluding such a contract from the provisions of the act.

The moneys, to pay for services or materials, performed or furnished under all contracts of that nature, are raised by the taxation machinery of the city and are paid into the city treasury to be paid out in the same way as other city moneys and by the same city comptroller. The lot upon which the building was to be erected was owned by the city and the building would be its property, but under the control for school purposes of the board of education. Such a contract is, therefore, within

every reason that operates in that of a technical and formal contract with the city by its corporate title. Did the legislature, by the use of the words in the first section of the act — "Any contract made between any person or persons and any incorporated city in the State of New York," mean to include only such technical contracts as above referred to, or did it not also mean to include in its beneficent provisions a contract made by somebody acting under authority of law, yet in fact and substance for the city, in regard to a public work, the title to which was in an incorporated city and was to be paid for by the moneys in its treasury, raised by taxation and disbursed by its own officer? The exact and literal wording of an act may sometimes be rejected, if, upon a survey of the whole act and the purpose to be accomplished or the wrong to be remedied, it is plain that such exact or literal rendering of the words would not carry out the legislative intent, and the title of an act may be regarded also for the same purpose of arriving at the real meaning of the legislature. (*Smith* v. *People*, 47 N. Y. 330; *People ex rel. West. F. Ins. Co.* v. *Davenport*, 91 id. 574.) By the title the purpose of this act is evident and would include just such a case as is now before us. And while if the legislative meaning in the words used by it in the body of the act were plain and free from any ambiguity, those words would control the title, yet such is not the case here.

The section speaks of a contract between a person and an incorporated city. Can it be contended that a lawful agent of the city could not make a contract in its behalf within the scope of his authority and within the meaning of this section, although not in so many words using the corporate title of the city in the contract? And cannot an individual or even a body corporate be an agent of the city under this act and to carry out its object, and yet, for all other purposes, be a separate and distinct entity? The question is, what is a contract between one person and an incorporated city, within the meaning of this act? Is the answer so absolutely free from doubt as to preclude the reference to the title or the manifest

purpose of the act, and the condition of the subject before its passage? It is thought not.

It is seen that, before its passage, persons in the situation of the plaintiff had no lien upon buildings or moneys due or to grow due under the contract. The lien existed in all cases except in regard to public works. The reason for including such a contract as this is plainly just as strong as if the trustees of the school board had been a formal part of the city government. We think it was not necessary that they should be such formal part in order to act substantially and for the purpose of this act as the agents of the city, legally appointed, and as such executing on behalf of the city this contract.

It is not, of course, very important, but it appears that this was the capacity in which the trustees of the school district themselves thought they were acting, for in the contract is this provision: " This contract shall enure to the benefit of the board of education and of the mayor, aldermen and commonalty of the city of New York, as well as the parties of the first part, either of whom shall have a right of action under the same to maintain and prosecute any interest, right or power hereby reserved to or vested in the parties of the first part " The city has recognized the agency of the school trustees by payments made under the contract to the contractor before the filing of any liens.

It is further urged, in amplification of the argument upon the part of the city, that there was in this case no head of a city department or bureau in which to file a notice of claim under the second section of the act in question, because the board of education or the trustees of public schools of the twelfth ward formed no such department or bureau of the city government within the cases above cited. But having so construed the first section of the act as to include a case of this kind, and holding that a contract such as this was a contract substantially and for the purpose of the act, with an incorporated city, there is no difficulty in holding that for the same purpose the board of education was the department or bureau having charge of the work and the comptroller of the city

was the financial officer thereof, and that a filing of the notice of lien with the clerk of the board and with the comptroller was a fulfillment of the provision of that section of the act.

Coming to these conclusions, it becomes unnecessary to consider the effect of the passage of the act of 1881 or the giving of the bond of indemnity to the comptroller. The judgment of the Common Pleas should be affirmed with costs. All concur.

Judgment affirmed.