SEXLAUSE & LEMKE, Plaintiff v. LUKE A. BURKE & SONS
CO., GLOBE INDEMNITY COMPANY, THE CITY OF NEW
YORK, DAVID A. BOODY, H. ROSS APPLETON, DANIEL
W. McWILLIAMS and JOHN W. IMVOY, Constituting
a Board or Committee Having Charge of the Erec-
tion of Carnegie Library Buildings in the Borough
of Brooklyn, Defendants.

(Supreme Court, Kings Special Term, April, 1917.)

Lien Law, § 2 — when valid mechanic's lien created — city of New
York — Laws of 1901, chap. 580.

　　Under section 2 of the Lien Law, a valid mechanic's lien may
　　be created and enforced against a " Carnegie Free Public
　　Library " established in the city of New York under the author-
　　ity of chapter 580 of the Laws of 1901.

ACTION to foreclose mechanic's lien.

Jacob H. Bantim, for plaintiff.

Charles DeHart Brower, for Globe Indemnity
Company.

MANNING, J.  This case is submitted on an agreed
statement of facts and the cardinal question to be
determined is whether a valid mechanic's lien can be
created and enforced against what is known as a
Carnegie Free Public Library.

Chapter 580 of the Laws of 1901 is the legislative
authority for the establishment throughout the city of
New York of what is known as the Carnegie Libraries.
The act in question, which is entitled "An act to author-
ize and empower the city of New York to establish and
maintain a free public library system," indicates a
willingness and desire both on the part of the donor,
Mr. Carnegie, and the city to unite in a common pur-

pose; to wit, that of establishing and maintaining free public libraries for the benefit of the people.

Mr. Carnegie was to furnish, and did furnish, the money with which the buildings were to be erected and equipped, and the municipality was to furnish the lands and provide for the maintenance and upkeep of the structures. The terms of the gift to the city provided that the entire property, including building, books, and the other contents, was to be property of the city. In the prosecution of every step necessary and incident to the promotion of the beneficial enterprise, a library committee, acting for Mr. Carnegie, and the city officials, on behalf of the people, worked in effective co-operation.

The city even employed the architect and paid his expenses, and in many of the meetings and negotiations concerning the project and the progress of the work the city's representatives attended and participated in such conferences. When the stipulated facts in this case are taken into consideration, together with the law under which these libraries were to be constructed and maintained, the conclusion is inevitable that the city intended to secure, and did so secure, through the generosity of Mr. Carnegie, a great public measure, benefit and improvement for its citizens of which the municipality became the owner, and this improvement clearly falls within the purview of section 2 of the Lien Law.

Prior to the passage of chapter 315 of the Laws of 1878 a lien could not be enforced against the real property of a municipality (*Leonard* v. *City of Brooklyn,* 71 N. Y. 498) ; but this condition no longer prevails for the statute above referred to expressly provides for the enforcing of mechanics' liens against works of a public character and undoubtedly the statute was passed to relieve an unjust situation as it existed when

the decision in *Leonard* v. *City of Brooklyn* was rendered.

The title of the act clearly shows that was the object of the statute: ''An act to secure the payment of laborers, mechanics, merchants, traders, and persons furnishing materials toward the performing of any public work in the cities of the state of New York;'' and by section 25 of the Lien Law its provisions are to be liberally construed '' to secure the beneficial interests and purposes thereof.'' Applying this canon of construction to the law and the facts in the case under consideration, I am inclined to hold that the plaintiff secured a valid lien under section 5 of the Lien Law, and also to hold that the validity of his claim and lien is not affected by the question as to whether the city secured the money to build the library by gift or taxation, or in what way the money was to be expended.

The public improvement is undoubtedly there with the knowledge and approval of the municipality, and there is no good reason in law or in equity why those who contributed to placing such an improvement in a condition where it can be used by the public should not be paid for their labor and materials, if the money is available, or if the claimant can under the law file a valid lien for what is his due.

The reasoning of the Court of Appeals in the case of *Bell* v. *City of New York,* 105 N. Y. 139, 144, is pertinent to the situation here and can be read with interest.

Judgment for the plaintiff for the amount claimed in the complaint, and costs, against the contractor and the bonding company.

Judgment accordingly.