THERESA GARRAMONE, Plaintiff, *v.* MAURICE SIMMONS, Property Clerk of the Police Department of the City of New York, Defendant, and AGNES ROSE and VIOLA M. SCHILLING, Interpleaded Defendants.

Supreme Court, Trial Term, New York County, October 20, 1941.

*Roy P. Monahan* and *Santo C. Caruso*, for the plaintiff.

*William C. Chanler; Corporation Counsel,* for the defendant Maurice Simmons, property clerk, etc.

*J. Carlisle Swain,* for the interpleaded defendant Agnes Rose.

*Maurice C. Colton,* for the interpleaded defendant Viola M. Schilling.

EDER, J. On April 10, 1940, the plaintiff caused to be deposited with the police department of the city of New York an unset diamond of about ten carats in weight which she had found; the property clerk of the police department received it and later advertised in the *City Record* the finding of this gem and its deposit with him in an endeavor to locate the true owner. The two interpleaded defendants, Rose and Schilling, each claimed ownership of this jewel. After the expiration of a period of six months following such deposit the plaintiff brought this action to recover possession of this precious stone, the property clerk having declined to return it.

In causing the diamond to be deposited with the property clerk plaintiff did so under impression and belief that there rested upon her as a finder of lost property the compulsory statutory duty to deposit the article with the property clerk to enable the police department to locate the true owner and that if the article remained unclaimed by the true owner for a period of six months she was entitled to the return of the stone. The property clerk in accepting such deposit, advertising in the *City Record* for the true owner and retaining possession for a period of six months acted, apparently, under a like impression and belief that such was plaintiff's duty as a finder of lost property and that such was his duty as property clerk by virtue of the provisions of section 435-4.0 of title A of chapter 18 of the Administrative Code of the City of New York.

As respects the finding of lost property the only statutes relating thereto appear to be section 1300 of the Penal Law, and the mentioned section of the Administrative Code. Section 1300 of the Penal Law is entitled " Appropriating lost property," and reads as follows: " A person, who finds lost property under circumstances which give him knowledge or means of inquiry as to the true owner, and who appropriates such property to his own use,

332

or to the use of another person who is not entitled thereto, without having first made every reasonable effort to find the owner and restore the property to him, is guilty of larceny."

Said section 435–4.0 provides that the police commissioner shall employ a property clerk " to take charge of all property * * * which shall be lost * * *." The property clerk is required to keep a record of all such property with appropriate details concerning it and its history. On August 4, 1941, chapter 18 of the Administrative Code was amended by the city council (N. Y. City Local Law of 1941, No. 65), by adding thereto a new section to follow section 435–4.0, to be section 435–4.1; it is entitled " Reporting the finding of property," and reads as follows:

" a. Any person who finds any article of value, such as jewelry or money, shall report the finding of such article to the commissioner within ten days after the finding thereof."

Failure to do so is made punishable by fine or imprisonment or both. (Subd. b.)

As the finding of the article here involved occurred prior to the enactment of this provision and amendment to the Administrative Code, such amendment is of no basic significance.

It is to be observed that neither under the Penal Law nor under the Administrative Code is a finder of lost property required to deposit such property with the police department to enable the true owner to be located through this agency and this is so even under the mentioned amendment to the Administrative Code which merely imposes upon the finder a duty to " report " such finding to the police department but contains no requirement for the finder to *deposit* the property with the department.

The property clerk appears to justify acceptance of such deposit and the advertising of its receipt by him and his retention of the article for a period of six months by virtue of subdivisions " d " and " e " of said section 435–4.0. I fail to find that these provisions vest him with any such right, duty or power.

Subdivision " d " relates to and deals with registering and advertising stolen property; the only reference to " *lost* " property appears in the title of this subdivision, reading as follows: " d. Unclaimed, lost or stolen property, to be registered and advertised."

The title of an act forms no part of the law itself and may only be resorted to as an aid in the interpretation of the statute if the legislative intent is not clearly expressed in the enactment itself (*Bell* v. *Mayor of New York*, 105 N. Y. 139, 144); when the statute itself clearly expresses the legislative intent, the title of an act is **of no** consequence. (*People* v. *Willett*, 164 App. Div. 1; affd.,

213 N. Y. 368; *Neumann* v. *City of New York*, 137 App. Div. 55; *Matter of Town of Tonawanda*, 127 Misc. 852.)

Since subdivision " d " itself clearly makes no provision for the acceptance by the property clerk of *lost* property offered to him for deposit to enable the true owner to be ascertained, or for the advertising of such property, it affords no support to the view of the property clerk that this subdivision is authority for him to do so.

Nor do I see that subdivision " e " confers upon the property clerk any right to retain such deposited property for a period of six months; this subdivision " e " relates to and deals with the disposal of stolen property and is entitled " Disposal of stolen and unclaimed property." So far as here deemed relevant, it provides:

" 1. If the property stolen or embezzled be not claimed by the owner before the expiration of six months from the conviction of a person for stealing or embezzling it, such property, and all such other property, securities, moneys, things or choses in action, that shall remain in the custody of such property clerk for the period of six months without any lawful claimant thereto, after having been advertised in the City Record for a period of ten days, may be sold at public auction in a suitable room to be designated for such purpose, and the proceeds of such sale shall be paid into the police pension fund."

The suggestion is advanced that the phrase " all such other property," considered with the word " unclaimed " in the title of this provision, imports a legislative intent that in addition to vesting authority in the property clerk to retain, advertise and dispose of property stolen or embezzled, it includes the right of the property clerk to receive, retain, advertise and dispose of all such other property as may come into his possession — as *lost* property — which remains unclaimed.

I am unable to assent to such a construction and interpretation. This subdivision " e " simply deals with and has reference to, *first*, the specific property which has been feloniously acquired by a convicted offender and taken from him and deposited with the property clerk, and, *second*, to such other property as may be found in his possession and taken from him, for which no claimant appears, and apparently is founded upon a presumption that all property found in his possession is the result of criminal acquisition. By no process of reasoning can this phrase, read in the light of the title of this subdivision, and its context, be construed and interpreted to relate to and include " lost " property, having due regard for recognized and accepted canons of statutory construction.

It is an elementary rule of statutory construction that statutes are to be given a sensible and not an absurd construction. (*American Dock Co.* v. *City of New York*, 174 Misc. 813; affd., 261 App. Div. 1063; affd., 286 N. Y. 658.)

It is finally urged that the conduct of the plaintiff and the property clerk is due to and results from a custom of long standing which should be given recognition in the construction and interpretation of section 435–4.0. This premise cannot prevail. Usage or custom may be resorted to in aid of ascertainment of legislative intent which is not sufficiently clear but it cannot control plain language nor can usage or custom create or take the place of positive law. (1 McKinney's Consol. Laws, §§ 98, 108; Crawford, Statutory Construction [1940 ed.], § 218, and cases there cited.)

With respect to statutes, custom or usage cannot be invoked to add to or diminish that which is set forth in formal and deliberate terms. (*Delaplane* v. *Crenshaw*, 56 Va. [15 Gratt.] 457, 469; Black, Interpretation of Laws [2d ed.], p. 296; Endlich, Interpretation of Statutes, §§ 361, 362.) " A custom, however venerable, must yield to a positive and explicit statute. * * * It is not permissible to show that the members of the Legislature knew of a custom existing at the time the law was remodeled, in order to argue from their silence that they intended to sanction such custom." (Black, Interpretation of Laws [2d ed.], p. 296.)

Research has failed to reveal any provision of law which makes it compulsory for a finder of lost property to deposit it with the police department to enable it to locate the true owner or any statute which vests the property clerk of the police department with authority to accept such deposit for that or any other like purpose or which empowers him to retain it for any period of time or to deal with the same or to exercise any right or dominion thereover.

The law of the State and of the city is obviously wanting with respect to legislation concerning the finding of lost property. In view of the large amount of property lost and which is found by others than the true owner, it is obviously imperative that legislation be enacted making it the compulsory duty of the finder of lost property to promptly report such finding to a designated public agency and to deposit such property with it in order to enable such agency to locate the true owner, if possible, and for the safekeeping of such property. A police department, in my opinion, is an appropriate and most dependable medium for such purpose. Such a statute should be clear in its title, headings and context; in this connection it is apropos to suggest a revision of the existing provisions of the Administrative Code.

The act of the plaintiff in causing the diamond to be deposited with the police department to enable it to locate the true owner may be viewed as a *bona fide* attempt by her at compliance with the requirements of section 1300 of the Penal Law.

Respecting the acquisition of title to lost property, it is the general rule that the finder is the owner thereof against every one but the loser and the rule is clearly and succinctly set forth in *Loucks* v. *Gallogly* (1 Misc. 22) as follows: " The law is well settled that the finder of *lost* property has a valid claim to the same against all the world except the true owner  *  *  *." It may be otherwise expressed to be that the finder of lost property does not merely, perforce such finding, acquire an indefeasible title thereto, but he does acquire a title which is good against every one but the rightful owner.

From the views I have given it follows that the property clerk had and has no right to withhold the diamond from the plaintiff for any of the reasons assigned in his behalf.

The claim of the interpleaded defendant Rose was withdrawn during the trial. As to the claim of the interpleaded defendant Schilling that the diamond is her property, that she is the true owner thereof and entitled to its possession, I find that she has utterly failed in her proof; her story concerning it is a fanciful and incredible one; moreover, she has wholly failed to prove either ownership of this particular diamond or to establish similarity between the diamond she claims to have lost and the one found by the plaintiff.

In this case a jury and findings were waived.

Judgment for plaintiff. Appropriate exceptions to defendants. Thirty days' stay; sixty days to make a case.