## Erie School District Appeal.

Argued April 11, 1944.    Before KELLER, P. J., BALD-
RIGE, RHODES, HIRT, KENWORTHEY, RENO and JAMES, JJ.

William W. Knox, School District Solicitor, for appellant.

Henry R. Jeffs, Assistant City Solicitor, with him Edward M. Murphy, City Solicitor, for appellee.

OPINION BY RHODES, J., September 27, 1944:

This case involves the interpretation to be given the Act of May 21, 1937, P. L. 787, as amended by the Acts of July 29, 1941, P. L. 600, and May 21, 1943, P. L. 282, 72 PS §5878a et seq., and especially section 4, 72 PS §5878d, which provides that the proceeds of a compromise or private sale under the act shall be distributed, first to the costs of the sale whereat the property was acquired, and the balance to the respective taxing authorities in proportion to their tax and municipal claims.

The city of Erie presented a petition to the court of common pleas asking approval of a compromise of delinquent taxes and municipal claims against the property of the heirs of Thomas Peplinski, located in the city of Erie, which had been purchased by the County Commissioners of Erie County at a sale by the county treasurer of that county for nonpayment of taxes, and on which the period of redemption had expired. The petition also asked approval of a private sale of said

property to George J. Auer and Leona Auer for an amount insufficient to pay all the unpaid taxes and municipal claims against the property. Objections were filed by the school district of the city of Erie, and answer was made by the city. The court dismissed the objections, and by decree approved the compromise and directed conveyance of the property to the purchasers at private sale. The school district has appealed.

Taxes on the property in question became delinquent, and in August, 1940, it was sold by the county treasurer to the county commissioners. The redemption period had expired when the petition on behalf of the city of Erie was presented on October 7, 1943. Delinquent school taxes and costs amounted to $429.93, delinquent city taxes and costs, $351.80, delinquent county taxes and costs, $88.27. There was a lien for paving due the city in the amount of $1,131.01. The total delinquencies were $2,001.01. The proposed purchasers offered to buy the property for $1,000 in full compromise, settlement, and satisfaction of all delinquent taxes and municipal claims, together with penalties, interest, and costs due thereon.

The city's petition asserted that its paving lien should share pro rata with the taxes in the proceeds of the compromise as follows:

|  |  | Percentages: |
| --- | --- | --- |
| The City of Erie, for tax claims .... | $175.81 | 17.581 |
| The City of Erie, for municipal claim ........................ | 565.21 | 56.522 |
| The School District of The City of Erie ........................ | 214.86 | 21.485 |
| The County of Erie ............. | 44.12 | 4.412 |
|  | $1,000.00 | 100.00 |

The contention of the school district was that the

municipal lien for paving could not participate in the distribution until taxes had been paid in full.[1]

The court below held that in a tax compromise proceeding under the act in question municipal liens were of equal dignity with taxes, and that distribution was to be on a pro rata basis.

It has long been the legislative intent to regard taxes as liens superior in point of payment to all other liens. *Gordon, Secretary of Banking, v. Harrisburg et al.,* 314 Pa. 70, 73, 171 A. 277. This is affirmed by reference to the several acts of assembly which have preceded and followed the one before us.

The Act of June 4, 1901, P. L. 364 (repealed and supplied), was a comprehensive law relating to liens for taxes, for municipal improvements, and for the removal of nuisances, and repealed many prior acts. Section 2 of the act provided that "all taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth, in the manner and to the extent hereinafter set forth, shall be and they are hereby declared to be a first lien on said property ......; and such liens shall have priority to, and be fully paid and satisfied out of the proceeds of any judicial sale of said property before, any other obligation, judgment, claim, lien or estate with which the said property may become .charged, or for which it may become liable, save and except only the costs of the sale and of the writ upon which it is made." Section 3 provided that municipal claims were a lien and had priority "save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property." Section 32 provided: "On any such [judicial] sale being made, all tax claims shall be paid out of the proceeds thereof first, the old-

---

[1] In the County of Erie, county taxes are returned to the county treasurer's office, while city and school taxes are filed as liens under the Municipal Lien Act of 1923, P. L. 207.

est tax having priority, and municipal claims shall be paid next, the oldest in point of lien having priority."

The Municipal Lien Act of May 16, 1923, P. L. 207,[2] section 2, 53 PS §2022, provides that "All taxes which may hereafter be lawfully imposed or assessed on any property in this Commonwealth ...... shall be and they are hereby declared to be a first lien on said property ........; and such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property ......, save and except only the costs of the sale and of the writ upon which it is made." Section 3 of the act, 53 PS §2023, provides that "All municipal claims ...... are hereby declared to be a lien on said property ......; and said liens shall have priority ...... save and except only the costs of the sale and of the writ upon which it is made, and the taxes imposed or assessed upon said property." Section 31 of the act, 53 PS §2051, contains the same provision as section 32 of the Act of June 4, 1901, P. L. 364.

The same legislative intent is expressed in the Act of May 29, 1931, P. L. 280, §4, as amended by the Act of June 20, 1939, P. L. 498, 72 PS §5971d, which relates to delinquent taxes on seated land.

Following the Act of May 25, 1933, P. L. 1018, 72 PS §§5876, 5877, 5878, which was the first tax compromise act, and which provided that the proceeds of such compromise shall be distributed to the respective taxing authorities in proportion to their tax claims, the general tax compromise Act of May 21, 1937, P. L. 787, 72 PS §5878a et seq., was enacted and contained (§4) the same provision as the Act of 1933 until amended by the Act of July 29, 1941, P. L. 600, §1. See, also,

---

[2] This act seems to supply the Act of May 24, 1921, P. L. 1089, which provided, sections 2 and 3, that all taxes shall be a first lien in favor of the several municipalities to which the tax is payable.

Act of November 23, 1938, Sp. Sess., P. L. 90, §3, 72 PS §5553."

The Act of June 26, 1939, P. L. 1100, 72 PS §5941.1 et seq., authorizing the sale of real estate under a judgment obtained on a tax claim or claims by the sheriff for a sum less than the total amount of delinquent taxes and municipal claims, provides (§4, 72 PS §5941.4): "On any such sale, the cost and expenses of the sale shall first be paid out of the proceeds. The balance thereof shall be applied, first, to the payment of tax claims, the oldest thereof having priority; municipal claims shall be paid next, the oldest in point of lien having priority; and any surplus shall be distributed in accordance with law."

In the legislative session of 1941, in addition to the amendatory Act of July 29, 1941, P. L. 600, 72 PS §5878d, the act specifically involved in this case, two other acts were passed. The Act of July 28, 1941, P. L. 535, 72 PS §6105.1 et seq., provides for redemption of real property purchased by political subdivisions at tax sales upon the payment of the amount charged against the same and costs by installment payments. Under the written agreement with the taxing authorities all taxes and municipal claims and penalties and interest accrued thereon charged against the property are to be paid in full in five equal installments. Consequently, section 5, 72 PS §6105.5, indicated no intent to alter the existing priority of taxes over municipal claims.

The Joint Purchase Act of July 28, 1941, P. L. 536, 72 PS §6151.1, authorizes political subdivisions at any sale of real estate for the nonpayment of taxes or municipal claims to take title jointly in proportion to their tax claims. It provides, §3, 72 PS §6151.3, after the period for redemption has expired, for private or public sale of the real estate, and for the payment of the balance of the purchase price after expenses to the interested political subdivisions, first in proportion to

their tax claims, and second in proportion to their municipal claims. Any balance thereafter is to be paid to the political subdivisions in proportion to their tax claims at the time the real estate was acquired by them.

Finally, there is the Act of May 21, 1943, P. L. 364, §1, reenacting and further amending section 17 of the Act of May 29, 1931, P. L. 280, 72 PS §5971q, which provides, inter alia, that "the proceeds realized [from sale under order of the court] shall be distributed, to payment, first, of the costs of sale; second, the tax liens of the Commonwealth, if any; third, taxes due the various taxing districts, in proportion to their respective interests; fourth, municipal claims due on such property; and fifth, mortgage and other liens, in order of their priority."

The Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551, states: "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature." Section 52, 46 PS §552, declares that "In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: (1) That the Legislature does not intend a result that is absurd, impossible of execution or unreasonable ......; (3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth." Sections 62, 46 PS §562, also declares: "Laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things. Laws in pari materia shall be construed together, if possible, as one law."

In *Big Black Creek Improvement Co. v. The Commonwealth*, 94 Pa. 450, at page 455, it was stated: "Statutes are to be construed so as may best effectuate the intention of the makers ...... though that construction may seem contrary to the letter of the statute."

"In Bell v. New York, 105 N. Y. 139, the New York Court of Appeals declared 'the exact and literal wording of an Act may sometimes be rejected, if, upon a survey of the whole Act and the purpose to be accomplished, or the wrong to be remedied, it is plain that such exact or literal rendering of the words would not carry out the legislative intent.' See also Endlich on the 'Interpretation of Statutes,' section 295": *Watson v. Witkin et al.,* 343 Pa. 1, at page 7, 22 A. 2d 17, at page 19.

If we construe literally the words in the Act of 1941, 72 PS §5878d—"to the respective taxing authorities in proportion to their tax and municipal claims"—they do not necessarily mean that taxes and municipal claims shall have the same status or rank and thus participate pro rata. Municipal claims are mentioned after taxes; and they are in a separate category from taxes. Although municipal liens are a species of taxation (*Hammett v. Philadelphia,* 65 Pa. 146, 150; *Erie v. Piece of Land,* 339 Pa. 321, 327, 14 A. 2d 428; *City of Johnstown v. Dibert,* 88 Pa. Superior Ct. 117, 121), they are not taxes in a strict sense of the word for two reasons: first, they are not assessed for governmental purposes, and, second, they are based on a theory of special benefit to the property against which the assessments are levied. "General taxation is enforced to serve the necessary purposes of government, while local assessments are enforced to serve mere local convenience, and for the additional benefit of private property holders. These differences have made it necessary to recognize taxation and local assessments as distinct subjects ......": *McMillan v. Tacoma,* 26 Wash. 358, 67 P. 68, at page 69. "It must be conceded that a general tax, which has primarily for its object the support of the government, whereby the government may exist, and lives and property may be protected and the pursuit of happiness guaranteed, is of greater dignity and more importance

572

than a tax bill issued for public improvements": *Missouri Real Estate & Loan Co. v. Burri*, 202 Mo. App. 242, 216 S. W. 570, at page 571. In *Manheim Township Supervisors v. Workman*, 350 Pa. 168, 38 A. 2d 273, our Supreme Court recently said that municipal assessments for local improvements are not really taxes but claims laid against properties specially benefited, being in the nature of an exaction from them of compensation for the presumed increase in their values resulting from the improvement. In any event, the intent of the legislature, as expressed by the quoted words of the Act of 1941, 72 PS §5878d, cannot be determined by ignoring other legislation on the subject, which clearly expresses a consistent intent as to the respective priorities, and provides for general uniformity.

The construction given by the court below would produce an anomalous situation—one which we do not believe the legislature intended. It would give an equal status or rank to taxes and municipal claims under the Act of May 21, 1937, P. L. 787, as amended, 72 PS §5878a et seq., but which is not given when other methods of collection are pursued. It would give one status to municipal claims for the purpose of distribution when the property was sold under the Act of 1937, as amended, 72 PS §5878a et seq., and another status when the property was sold under other acts. We find nothing to indicate that the legislature intended to create this diversity even if it were permissible for it to do so. See Article 3, §7, of the Constitution of Pennsylvania. There is no principle of statutory construction which would justify us in construing the Act of 1941, 72 PS §5878d, in a manner which would lead to confusion and create competition among the authorities to act first and adopt that procedure which was favorable to the first mover. See Act of May 21, 1943, P. L. 364, 72 PS §5971q; Municipal Lien Act of May 16, 1923, P. L. 207, 53 PS §2021 et seq.;

*Andrews Land Corporation's Appeal*, 149 Pa. Superior Ct. 212, 27 A. 2d 700. As we said in *Seltzer v. Reading*, 151 Pa. Superior Ct. 226, at page 230, 30 A. 2d 177, at page 179: "Statutes are 'to be construed in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence.' 59 C. J., p. 1038; Com. v. Bacon, 8 S. & R. 135."

Although the legislature has the power to provide for priority or lien equality, in view of the expressed legislative intent, we will not place a municipal claim upon an equal basis with a tax claim in the absence of a plain legislative declaration of a change of policy.

The decree of the court below is reversed in so far as it relates to the distribution of the proceeds of sale; the record is remitted, with direction that distribution be made in accordance with this opinion. Appellee shall pay the costs.