**POTTSTOWN SCHOOL DISTRICT**

v.

**Kenneth J. PETRO.**

**Appeal of: Northeast Revenue Service, LLC.**

Commonwealth Court of Pennsylvania.

Argued May 14, 2014.
Decided June 27, 2014.

John P. Rodgers, Wilkes Barre, for appellant.

Maureen M. McBride, West Chester, and Jeffrey C. Schwartz, Norristown, for appellee Pottstown School District.

BEFORE: DAN PELLEGRINI, President Judge, and BONNIE BRIGANCE LEADBETTER, Judge, and RENÉE COHN JUBELIRER, Judge, and ROBERT SIMPSON, Judge, and MARY HANNAH LEAVITT, Judge, and P. KEVIN BROBSON, Judge, and PATRICIA A. McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

Northeast Revenue Service, LLC (Northeast), an agent for the Montgomery County Tax Claim Bureau, appeals from the September 5, 2013 order of the Court of Common Pleas of Montgomery County (trial court), denying Northeast's exceptions and confirming the Sheriff's proposed schedule of distribution of proceeds from a free and clear judicial sale conducted on January 30, 2013. We affirm.

The underlying facts of this case are not in dispute and were stipulated to by the parties before the trial court. Kenneth J. Petro was the record owner of property located at 1042 Park Drive, Pottstown, Montgomery County, Pennsylvania. On July 11, 2007, the Pottstown School Dis-

trict (School District) commenced an action pursuant to a writ of *scire facias* regarding delinquent 2006 taxes on the property. On November 1, 2011, the School District obtained a judgment against the property in the amount of $6,054.44. Pursuant to a writ of execution, the property was exposed to a public sale for the collection of delinquent real estate taxes on September 26, 2012. No third party bid the upset sale price of $57,804.59, which included Sheriff costs, taxes, and municipal claims. The trial court thereafter approved the sale of the property free and clear of all taxes, municipal claims, mortgages, and judgments, and the property was again exposed for sale on January 30, 2013. At this sale, the property was sold for a bid of $40,000.00.

Portnoff Law Associates, LTD (Portnoff), acting as the agent for the Borough of Pottstown (Borough) and the School District, submitted a claim for proceeds to the Sheriff in the amount of $52,598.04, representing delinquent real estate taxes and delinquent water, sewer, and trash fees for the property, plus attorney fees, court costs, and accrued interest from 2005 to 2013. The Borough had also submitted a separate claim in the amount of $1,349.76, representing outstanding utility charges. Northeast submitted a claim in the amount of $1,763.00, representing delinquent county and municipal taxes for 2011 and 2012.

On February 28, 2013, the Sheriff filed his proposed schedule of distribution of the sale proceeds. This schedule of distribution provided as follows:

1. $3,066.26 Payable to Sheriff of Montgomery County for costs
2. $1,398.12 Payable to Recorder of Deeds for Transfer Tax
3. $1,398.12 Payable to Recorder of Deeds for Transfer Tax
4. $949.30 Payable to Borough of Pottstown for Municipal Lien 2004–21361
5. $33,188.20 Payable to Portnoff Law Associates LTD for outstanding School/Borough Liens

(Stipulation, Exhibit A, Reproduced Record (R.R.) at 83a.)[1]

On March 11, 2013, Northeast filed exceptions to the Sheriff's proposed distribution alleging that, by denying first priority to Northeast's property tax liens, the distribution violated section 2 of what is commonly referred to as the Municipal Claims and Tax Liens Act (MCTLA), Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. § 7103. This section declares lawfully imposed and assessed taxes "to be a first lien on ... [real] property, together with all charges, expenses, and fees added thereto for failure to pay promptly" and provides that "such liens shall have priority to and be fully paid and satisfied out of the proceeds of any judicial sale of said property, before any other obligation, judgment, claim, lien, or estate...." *Id.* Northeast also noted that section 1 of the MCTLA specifically declares all taxes imposed by "counties, institution districts, cities, boroughs, towns, townships, and school districts on real property" to be first liens on such property. 53 P.S. § 7102.

Portnoff filed an answer to the exceptions contending that, pursuant to section 31 of the MCTLA, 53 P.S. § 7281, the oldest tax liens, in this case its liens, had priority over Northeast's more recent tax liens. This section does state that "[o]n any such sale being made all tax claims

---

1. The Sheriff's proposed distribution to Portnoff only covered delinquencies from 2005 to 2010.

shall be paid out of the proceeds thereof: first, the oldest tax having priority; and municipal claims shall be paid next, the oldest in point of lien having priority." 53 P.S. § 7281.

The trial court conducted a hearing with respect to Northeast's exceptions. At this hearing, Northeast argued that the remaining proceeds of the free and clear judicial sale should have been distributed proportionately in accordance with section 205(d) of the Real Estate Tax Sale Law (RETSL), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.205(d). This section, which addresses the distribution of proceeds received from a tax sale under the RETSL, provides that any Commonwealth tax liens receive first priority and any remainder is distributed "to the respective taxing districts in proportion to the taxes due them." 72 P.S. § 5860.205(d).

By order dated September 5, 2013, the trial court denied Northeast's exceptions and confirmed the Sheriff's proposed schedule of distribution. However, the trial court modified the distribution by eliminating the $949.30 originally proposed as payable to the Borough for a municipal lien. Hence, the trial court directed that $5,862.50 be distributed to the Sheriff's office for the costs of the sale and the remaining $34,137.50 be distributed to Portnoff for unpaid Borough and School District taxes from 2005 to 2010. Northeast filed a notice of appeal with the trial court.

The trial court thereafter issued an opinion in support of its order concluding that "[t]he proceeds of a Free and Clear Sale of real property conducted under the MCTLA should be distributed pursuant to the provisions of the MCTLA...." (Trial court op. at 2.) The trial court then observed that section 31 of the MCTLA provides that the oldest tax shall be paid first out of the proceeds of a free and clear judicial sale. The trial court also noted that section 205(d) of RETSL provides for a system of distribution which only applies to tax sales conducted under the RETSL. The trial court rejected an argument by Northeast that the RETSL's distribution schedule impliedly repeals the MCTLA's distribution schedule, noting that section 205(d) of the RETSL does not purport to establish a uniform and mandatory system. The trial court further noted that an identical argument was rejected by this Court in *City of Allentown v. Kauth,* 874 A.2d 164 (Pa.Cmwlth.2005), *appeal denied,* 590 Pa. 670, 912 A.2d 839 (2006).[2]

---

**2.** In *Kauth,* the City of Allentown (City) commenced two separate actions under the MCTLA to collect delinquent real estate taxes and utility charges against properties owned by Richard and Lourdes Kauth and George D. Haaf, II. The properties were exposed to upset sales, but there were no third-party bidders. The City then petitioned for a rule to show cause why the properties should not be sold free and clear of all tax and municipal claims, liens, mortgages, charges, and estates. The County of Lehigh (County) filed an answer alleging that the proposed judicial sales under the MCTLA would divest the properties of taxes owed to it and the Allentown School District, if the proceeds of the sales were insufficient to satisfy those taxes. The County argued that by virtue of the RETSL its tax liens could not be divested. The common pleas court entered final orders exposing the properties to judicial sales. The County appealed to this Court.

In its appeal, the County argued that the common pleas court erred by allowing the City to proceed with the free and clear judicial sales under the MCTLA. The County reiterated its allegations that the RETSL prohibited a divestiture of its tax liens, noting that section 312 of the RETSL, 72 P.S. § 5860.312, provided that taxes "shall remain a lien upon said property until fully paid and satisfied, or until said property shall be sold as provided in this act." The County further alleged that section 312 was irreconcilable with, and impliedly repealed, section 31 of the MCTLA. This Court rejected the County's

On appeal,[3] Northeast continues its argument that the proceeds of the free and clear judicial sale should have been distributed proportionately in accordance with section 205(d) of the RETSL. We disagree.

We begin with a review of the relevant statutory sections. Section 205(d) of the RETSL provides as follows:

(d) It shall be the duty of the bureau to distribute all moneys collected as the result of any tax sale conducted under the provisions of this act, less the deductions authorized by subsection (c), in the following manner and according to the following priority:

(1) First, to the Commonwealth, by payment to the State Treasurer through the Department of Revenue, for satisfaction of tax liens of the Commonwealth only if the total amount of such liens or such portion thereof have been included in the pur-

chase price and paid by the purchaser or the property is sold at judicial sale pursuant to this act.

(2) *Second, to the respective taxing districts in proportion to the taxes due them.*

(3) Third, to taxing districts or municipal authorities for satisfaction of municipal claims.

(4) Fourth, to mortgagees and other lien holders, in order of their priority, for satisfaction of mortgages and liens as they may appear of record, whether or not discharged by the sale.

(5) Fifth, to the owner of the property.

72 P.S. § 5860.205(d) (emphasis added).

Section 31 of the MCTLA states, in relevant part, that:

The lien of a tax or a municipal claim shall not be divested by any judicial sale of the property liened, where the

arguments, holding that a judicial sale under section 31 of the MCTLA clearly divested all liens levied against the subject property without exception. Regarding the County's claim that section 312 of the RETSL impliedly repealed section 31 of the MCTLA, we noted that the RETSL tax collection scheme was optional, rather than mandatory, and that the City elected to proceed under the MCTLA. We held that, since the City elected this option, the validity and effect of the judicial sales should be tested under the MCTLA alone, without regard to the RETSL.

Furthermore, we discussed the co-existence of the MCTLA and the RETSL:

As the trial court aptly noted, the MCTLA and RETSL are not inconsistent with one another; rather, they permit, through strikingly similar and parallel mechanisms, a taxing authority to expose a delinquent property for an upset sale and, in the absence of receiving the upset price by which to satisfy the delinquent taxes and claims, a 'free and clear' judicial sale. Whether the judicial sale is effected under the MCTLA or the RETSL the intent of the legislature is the same:

to return real property to productive use under new ownership.

In sum, we agree with the trial court's astute legal analysis regarding the purported conflict between the MCTLA and the RETSL. We hold that the two statutes are very similar and operate concurrently with one another, due to the fact that the RETSL establishes an alternative for the collection of delinquent tax claims, but not a mandatory alternative. The County's argument would require us to find, in derogation of the express language used by the legislature, that RETSL is mandatory. We find no merit to the County's claim that any or all of the provisions of the MCTLA have been impliedly repealed by the RETSL.

*Kauth,* 874 A.2d at 168–69 (citation and footnote omitted).

3. Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law. *Bell v. Berks County Tax Claim Bureau,* 832 A.2d 587 (Pa.Cmwlth. 2003).

amount due is indefinite or undetermined, or where the same is not due and payable; nor shall the lien of a tax or municipal claim be divested by any judicial sale of the property liened, as respects so much thereof as the proceeds of such sale may be insufficient to discharge; nor, except as hereinafter provided, shall a judicial sale of the property liened, under a judgment obtained on a tax or municipal claim, discharge the lien of any other tax or municipal claim than that upon which said sale is had, except to the extent that the proceeds realized are sufficient for its payment, after paying the costs, charges and fees, including reasonable attorney fees, expenses of the sale, and of the writ upon which it was made, and any other prior tax or municipal claims to which the fund may first be applicable. *On any such sale being made all tax claims shall be paid out of the proceeds thereof: first, the oldest tax having priority; and municipal claims shall be paid next, the oldest in point of lien having priority.* Mortgages, ground-rents, and other charges on or estates in the property which were recorded, or created where recording is not required, before any tax other than for the current year accrue, or before the actual doing of the work in front of or upon the particular property for which the municipal claim is filed, shall not be disturbed by such sale unless a prior lien is also discharged thereby.

In case the property be not sold for a sum sufficient to pay all taxes and municipal claims, together with the costs thereon, the plaintiff in any such claim may postpone the sale, without payment of costs, and file his petition setting forth that more than one year has elapsed since the filing of his claim; that he has exposed the property to sheriff's sale thereunder, and was unable to obtain a bid sufficient to pay the upset price in full; and, if the plaintiff is not a municipality as defined in this act, that he will bid sufficient to pay the upset price ... *All property at sheriff's sale shall be sold, clear of all claims, liens, mortgages, charges, and estates, to the highest bidder at such sale; and the proceeds realized therefrom shall be distributed in accordance with the priority of such claims;* and the purchaser at such sale shall take, and forever thereafter have, an absolute title to the property sold, free, and discharged of all tax and municipal claims, liens, mortgages, charges, and estates of whatsoever kind, subject only to the right of redemption as provided by law. In counties of the second class, upon return of the writ upon which the sale was made and upon the expiration of the statutory right of redemption and if no petition to set aside the sale is pending, the prothonotary shall satisfy all tax claims and municipal claims divested by the judicial sale in accordance with the order of court authorizing such sale.

53 P.S. § 7281 (emphasis added).

Northeast alleges that the aforementioned provisions of the RETSL and MCTLA are reconcilable and require the proceeds of a free and clear judicial sale to be distributed on a pro rata basis. Northeast also alleges that the trial court ignored the emphasized language of the second paragraph of section 31 of the MCTLA which directs that the proceeds of a free and clear judicial sale be distributed "in accordance with the priority of such claims." We disagree with these allegations.

In *Kauth*, we specifically noted that "the MCTLA and RETSL are not inconsistent with one another; rather, they permit, through strikingly similar and parallel mechanisms, a taxing authority to expose a

delinquent property for an upset sale and, in the absence of receiving the upset price by which to satisfy the delinquent taxes and claims, a 'free and clear' judicial sale." 874 A.2d at 168–69. Additionally, we described the tax collection scheme set forth under the RETSL as an optional, not mandatory, alternative for the collection of delinquent tax claims. Hence, we held that the provisions of the MCTLA, under which the City in that case elected to proceed, were controlling.

Similarly, in the present case, the School District elected to proceed under the MCTLA for collection of delinquent taxes. Accordingly, we look to the provisions of the MCTLA for resolution of this matter, without regard to the RETSL. *Kauth.* The first paragraph of section 31 of the MCTLA, the controlling statute herein, specifically directs that "the oldest tax" shall have priority when distributing the proceeds of a tax sale, followed by any municipal claims, again with the oldest lien having priority. Thus, this section addresses both the type or class of a claim (tax claim versus municipal claim) and the order of payment within the class (oldest paid first). The second paragraph of section 31, rather than supporting Northeast's arguments, simply requires the proceeds of a free and clear judicial sale to be distributed "in accordance with the priority of such claims." This priority is clearly set forth in the first paragraph of section 31. It would be illogical to conclude, as Northeast suggests, that the priority language of this paragraph is only applicable to upset sales, and not free and clear judicial sales. Indeed, there is no need to prioritize distribution of the proceeds of an upset sale, as such a sale includes the payment/satisfaction of all outstanding taxes, municipal claims, and liens.

Moreover, by its very terms, section 205(d) of the RETSL, the provision upon which Northeast relies, limits its distribution schedule to "all moneys collected as the result of any tax sale conducted under the provisions of this act. . . ." The sale in this case was conducted under the provisions of the MCTLA, not the RETSL. Furthermore, we note that it is not entirely clear that section 205(d)(2) of the RETSL, 72 P.S. § 5860.205(d)(2), providing for distribution to the "respective taxing districts in proportion to the taxes due them," strictly requires a pro rata distribution.

In *Lackawanna County Appeal,* 157 Pa.Super. 137, 42 A.2d 103 (1945), our Superior Court addressed similar language under a different statute involving a municipality's private sale of real property acquired by reason of nonpayment of taxes or municipal claims. The statute in *Lackawanna County Appeal* provided that the proceeds of a private sale should be applied first to the costs of the sale and the remainder distributed "to the respective taxing authorities in proportion to their tax and municipal claims." [4]

In *Lackawanna County Appeal,* the County Commissioners of Lackawanna County (Commissioners) sold a piece of property they acquired by reason of nonpayment of taxes for $1,000.00 in a private sale. At that time, unpaid taxes were owed to the City of Scranton, Lackawanna County, and the local school district. The Commissioners thereafter petitioned the common pleas court to distribute the proceeds of the sale on the basis of an "oldest first" priority, with the 1934 Lackawanna County taxes, the oldest tax lien, being paid in full; the 1935 Lackawanna County and City taxes being distributed pro rata; and the remainder, if any, being distributed pro rata to satisfy 1936 tax liens of the

---

4. Section 4 of the Act of May 21, 1937, P.L. 787, *as amended,* 72 P.S. § 5878d.

City and the local school district. The local school district contended that all of the unpaid taxes should be lumped together regardless of their respective priorities and distributed proportionately amongst the parties. The common pleas court agreed with the local school district.

On appeal, our Superior Court reversed, concluding that the distribution proposed by the Commissioners was proper. In reviewing the relevant statutory language "in proportion to their tax ... claims," our Superior Court held that such language applied "not merely to the amounts of the claims but to their respective priorities." *Id.* at 104. Additionally, the Court noted that:

> It has not only been the legislative intent to regard taxes as liens superior in point of payment to all other liens, but it has likewise been the legislative intent that tax claims be paid out of the proceeds of sale first and according to their priority.

42 A.2d at 105. The Court noted that a sale under this statute did "not materially differ from sales denominated judicial sales." *Id.* Further, the Court found it "significant that the long recognized principle that the tax oldest in point of lien shall have priority has not been changed by any legislative pronouncement." *Id.*

This analysis was later approved by our Supreme Court in *New Castle School District v. Travers*, 353 Pa. 261, 44 A.2d 665 (1945), a case involving the distribution of rents received by the County Commissioners of Lawrence County for several pieces of real estate acquired at a County Treasurer's sale. This real estate was subject to outstanding tax liabilities from various taxing authorities, including the City of New Castle and the New Castle School District. The Court affirmed an "oldest first" distribution, noting that:

> Here must be noted the very recent decision of the Superior Court in [Lackawanna County Appeal]. The court was there considering the basis for distribution of the proceeds of a sale of tax lands. The decision was that if money enough is realized from the sale to pay all taxes, the taxing authorities share proportionately; if not, the oldest taxes are paid first. There is no priority among the taxes of the various taxing authorities for the same year. This method must be followed in distributing the rents from tax lands. The rents must be distributed in the same proportion as the proceeds of the lands. As a necessary corollary, we cannot distribute rents until the lands from which rents have been derived have been sold. Here we should note also the case of *Erie School District Appeal*, [155 Pa.Super. 564, 39 A.2d 271 (1944)], which establishes the place of municipal liens in distribution of the proceeds of sale; they are paid in full, if there is money enough, otherwise they are paid in order of seniority after the taxes of all taxing authorities. The same formula is followed as to rents.

*Id.* at 668. These cases stand for the proposition that the oldest tax liens are paid first, and, if there are multiple taxing authorities asserting tax liens in the years that follow, any remaining proceeds are distributed on a pro rata basis. Since the language at issue in the aforementioned cases is similar to the language of section 205(d)(2) of the RETSL, we find the reasoning of these cases to be instructive and controlling, such that the Sheriff's distribution to Portnoff was appropriate in this case.[5]

---

5. As noted above, the remaining balance from the free and clear judicial sale that was paid to Portnoff covered tax delinquencies from 2005 to 2010. Northeast's claim related to

Finally, we address Northeast's contention that the trial court erred by not directing Portnoff to provide a full accounting of the amount of interest and attorney fees charged to each tax claim.[6] Again, we disagree.

■ Section 1 of the MCTLA defines "taxes" as including "all penalties, interest, costs, charges, expenses and fees, including reasonable attorney fees...." 53 P.S. § 7101. Northeast contends that the trial court should have determined if Portnoff's attorney fees were reasonable pursuant to section 3(a.1) of the MCTLA, added by the Act of February 7, 1996, P.L. 1, *as amended*, 53 P.S. § 7106(a.1), which provides, in pertinent part, as follows:

> It is not the intent of this section to require owners to pay, or municipalities to sanction, inappropriate or unreasonable attorney fees, charges or expenses for routine functions. Attorney fees incurred in the collection of any delinquent account, including municipal claims, municipal liens, taxes, tax claims and tax liens, shall be in an amount sufficient to compensate attorneys undertaking collection and representation of a municipality or its assignee in any actions in law or equity involving claims arising under this act. A municipality by ordinance, or by resolution if the municipality is of a class which does not have the power to enact an ordinance, shall adopt the schedule of attorney fees. Where attorney fees are sought to be collected in connection with the collection of a delinquent account, including municipal claims, municipal liens, taxes,

tax claims and tax liens, the owner may petition the court of common pleas in the county where the property subject to the municipal claim and lien, tax claim and lien or taxes is located to adjudicate the reasonableness of the attorney fees imposed.

Northeast's reliance on this section is misplaced. By its very terms, this section only provides an "owner" of property with the ability to challenge the reasonableness of attorney fees; it makes no mention of a taxing authority's ability to challenge the same. In addition, Northeast raised no issue regarding the reasonableness of such fees in its exceptions filed with the trial court. Likewise, Northeast did not raise this issue in the course of the hearing before the trial court with respect to its exceptions or in the statement of questions in its brief to this Court. Hence, this issue has been waived. *See* Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 2116 ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.")

Accordingly, the order of the trial court is affirmed.

Judge LEADBETTER joins in this opinion except as to itemization of counsel fees, as to which she concurs in the result only.

### ORDER

AND NOW, this 27th day of June, 2014, the order of the Court of Common Pleas of

---

tax delinquencies for 2011 and 2012. Had there been a sufficient amount of funds remaining after this distribution to Portnoff, a pro rata distribution would have been required for the 2011 and 2012 tax delinquencies, as both Portnoff and Northeast had asserted claims for these years.

**6.** Northeast did not raise this issue as a separate issue in its brief to this Court, but did note in its brief to this Court that it had requested an accounting in its brief to the trial court but the trial court did not address its request.

Montgomery County, dated September 5, 2013, is hereby affirmed.